HENRY MEYER, JR. (BY NEXT FRIEND), DEFENDANT IN
ERROR, v. CHARLES B. F. BENTON ET AL. (PARTNERS
TRADING AS BENTON, HEATH & COMPANY), PLAINT-
IFFS IN ERROR.

Argued June 26, 1906—Decided March 4, 1907.

Defendants having, without right or license, deposited hot ashes upon
 vacant land adjoining their factory, and the plaintiff (a boy)
 having sustained personal injuries by coming into contact with
 the ashes while engaged in play upon them or near them—*Held,*
 that the defendants were not liable in the absence of evidence to
 show that injury to the plaintiff, or to a class of which the
 plaintiff was one, ought reasonably to have been anticipated by
 defendants.

On error to Hudson Circuit Court.

For the plaintiffs in error, *Bedle, Edwards & Thompson.*

For the defendant in error, *Weller & Lichtenstein.*

The opinion of the court was delivered by

PITNEY, J. Plaintiff recovered a verdict and judgment
for personal injuries sustained by him under the following
circumstances: Defendants were the owners and occupants of
a factory property lying on the northerly side of Eighteenth
street, in Weehawken. The factory occupied the entire width
of their lot. Adjoining it, upon the east, was a piece of land
owned by the township of Weehawken, upon which was a
building designed to be used for the purposes of a pumping
station. Between defendants' factory and the pumping sta-
tion building was a vacant strip of land owned by the town-
ship, approximately twenty-three feet wide, and extending
from Eighteenth street northerly to the rear of the pumping
station. This strip of land is referred to in the evidence as
the "alleyway." Behind the pumping station, and extending
for a considerable distance to the eastward of it, there were

vacant lots of low-lying land, covered to a considerable extent with water, and which in cold weather were frequented by children, who were in the habit of skating and playing on the ice. Defendants were, and for several years had been, pursuing the practice of dumping hot ashes from their furnace fires upon the strip of land owned by the township, close beside the factory building. At the point where the dumping was done the natural surface was low, so that water stood there. The heap of ashes arose above the water level. On a day in January, 1904, when ice stood upon the water in the so-called "alleyway," and likewise upon the vacant lots in the rear and to the eastward of the pumping station, the plaintiff, then a boy nine years of age, was engaged in playing upon the ice on the vacant lots. Having played there for some hours, he went with a youthful companion to the "alley," and observing a stick of wood lying upon the ashes, he attempted to get the stick for the purpose of using it in his play. In reaching for the stick he placed one foot upon the ash-heap, the other foot being upon the adjoining ice. At this juncture he broke through the ice, whereupon hot ashes, that had been recently dumped upon the heap by one of defendants' employes, fell down upon him, and he received severe burns, either from the ashes or from the heated water.

Upon the trial a motion for nonsuit was made at the close of the plaintiff's evidence, and a motion for direction of a verdict in defendants' favor was made at the close of the whole case, the motions being based in part upon the ground that no actionable negligence on the part of the defendants had been shown, and that the defendants owed no duty to the plaintiff. These motions were overruled, and exceptions were thereupon sealed. In presenting the case to the jury, the learned trial judge instructed them "that when these defendants engaged in wheeling to and dumping upon this land quantities of hot ashes just taken from their furnaces, they owed to this plaintiff the duty of reasonable care in seeing to it that he should suffer no injury thereby." To this, exception was taken. These rulings were apparently based upon the theory that because defendants were not owners of the

land where the ashes were dumped, and had no rights there, they were liable in damages to anybody who might sustain injuries by means of the hot ashes, irrespective of the question whether the defendants had reasonable ground to anticipate that such injuries would result from what they did.

There was evidence from which defendants contend that the jury was at liberty to find, if not compelled to find, that the ashes were dumped at the place in question by the leave and license of the owner. Assuming that defendants' contention in this regard is not well founded, the responsibility of the defendants in the premises still depended, as we think, upon the question whether injury to the plaintiff, or to a class of which the plaintiff was one, ought reasonably to have been anticipated. This is the rule laid down by this court in the recent case of *Guinn* v. *Delaware and Atlantic Telephone Co.,* 43 *Vroom* 276. It underlies the decision of the Supreme Court in *Van Winkle* v. *American Steam Boiler Co.,* 23 *Id.* 240, 246, and the decision of the Supreme Court of Pennsylvania in a recent decision, to which we are referred by counsel for defendant in error. *Daltry* v. *Media Electric Light, Heat and Power Co.,* 208 *Pa. St.* 403. In the latter case the electric company was held liable for personal injuries sustained by a boy, while playing upon the lawn of one Darlington, through coming in contact with a live electric light wire that had been permitted by the defendant to remain suspended near the ground. The court said: "Having constructed the line across the lawn to the house in proximity to the carriageway, it knew that children, as well as adults, might frequent the way, and hence the necessity for keeping its wires in proper condition and repair to avoid danger. It must be presumed that the company also knew what the evidence disclosed as a fact, that children used the lawn of the premises near the gateway and in the vicinity of the wire, as well as the street in front of the premises, as a playground. Such conditions existed for a sufficient length of time to warrant the inference of notice to the company."

The present case is devoid of evidence to show this essential element of defendants' responsibility. The plaintiff him-

self testified that he had never played in the alleyway before, and that he went there on this occasion to get the stick referred to. He testified that he had previously "been through the alley," presumably using it as a way of passage, but whether on more than one occasion does not appear. One of his witnesses testified that he (the witness) was in the habit of playing upon the ice back of the pumping station, but not in the alley, did not use the alley as a way of passage, and never saw any other boys go through that way. This was the extent of the testimony adduced by the plaintiff upon this point. One of defendants' witnesses (a boy) testified to the habit of children with respect to playing on the ice in the rear of the pumping station, and that the children did not play in the alleyway. He testified to having seen boys go through the alleyway to reach the playground in the rear. How often this was observed he did not state, when it occurred he did not state, nor did his testimony include mention of circumstances tending to show that the practice was either frequent, long continued or notorious. · The user of the passageway as a mode of access to the lots in the rear was confined, so far as appears, to the limited times when the ice on the rear lots was frozen so as to afford a playground. The evidence did not go to the extent of establishing a custom on the part of the children to use the alley as a way of passage, still less to show that it was used so frequently as to charge the defendants with notice.

Whether the defendants, if notified of such a customary user, would have been bound, as reasonable men, to anticipate that a child would, instead of using the alley as a passage, deviate from the path and turn aside for the purpose of picking up an object from the ground (see *Haber* v. *Jenkins Rubber Co.*, 43 *Vroom* 171), and whether defendants would be held to a duty to render their ashes harmless to one using them as a place for play (*Friedman* v. *Snare & Triest Co.*, 42 *Id.* 605), are questions that we need not discuss.

The judgment under review should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRI-
SON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE,
REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN,
GRAY, DILL, J.J.   16.