WILLIAM J. RIVERS, DEFENDANT IN ERROR, v. PENNSYL-
VANIA RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued February 16, 1910—Decided June 13, 1910.

The plaintiff was a passenger upon the defendant's vestibuled train to be carried to its terminal station in Jersey City. The plaintiff did not obtain a seat in the car which he boarded because the company failed to furnish seats inside its passenger cars sufficient for the proper accommodation of its passengers. In passing from car to car in search of a seat, the plaintiff, at a point four or five blocks from the terminal station, was precipitated to the ground and injured, because the traps and door of the vestibule had been previously opened and been allowed to remain open when the accident occurred. That a notice had been posted, under authority of the statute, that "Passengers must keep off the platform until the train stops." *Held*—

(1) That if it was not negligent to have the traps open at the place of the accident, then the fact that they had been opened and remained open before that was immaterial.

(2) That in the face of the rules of the company to the contrary, authorized by the statute (*Pamph. L.* 1903, *p.* 666), it will not be presumed from the use of vestibuled cars that a passenger is impliedly invited to pass at will from car to car of a moving train.

(3) Under the act (*Pamph. L.* 1903, *p.* 666), and the posted regulations authorized by it, the only use which the passengers could legally make of the vestibule while the train was in motion, was to pass from car to car for the purpose of obtaining a seat.

(4) That the only duty involving on the defendant was to keep the platforms safe for the passengers rightfully there.

(5) The open condition of the doors and traps does not raise the inference that a reasonably prudent man should have foreseen that a passenger under these conditions would have been likely to pass through the vestibule for the purpose stated, in the absence of proofs to show it.

On error to Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and VOORHEES.

For the plaintiff in error, *Vredenburgh, Wall & Carey.*

For the defendant in error, *Clarence Kelsey.*

The opinion of the court was delivered by

VOORHEES, J. This is a writ of error to the Circuit Court removing a judgment for the plaintiff for $2,000 for personal injuries.

The errors assigned are refusals to nonsuit and to direct a verdict for the defendant.

The plaintiff, in company with one Munn, about eleven o'clock at night, boarded one of the defendant's trains at its Newark station to be carried to Jersey City. The train consisted of six cars, an express car and combination passenger and baggage car, not vestibuled, three passenger coaches, each vestibuled, and a Pullman car vestibuled. The plaintiff entered the fourth car by its rear platform, and being unable to obtain a seat, although his companion did, stood in the aisle, with several other passengers who likewise were unable to get seats. After the train had proceeded some distance from Newark, the plaintiff walked to the next car, followed by his companion, for the purpose, as he says, of obtaining a seat.

The plaintiff's testimony is:

"I proceeded to go forward and I noticed the lights on that platform were out, the forward platform of the car I was riding on, they went out. As I stepped on to the platform with my left foot, there was a sudden and violent starting of the train, jerking, which caused me to lose my footing, and I stepped to balance myself with the right foot and plunged down where the trap should have been closed; and I was on to the trestle bed, and I was left there unconscious."

He further said that he stepped to the right to balance himself as anyone would do if he went to fall.

It appears, undisputedly, that when the train had just passed Waldo avenue yard, at the easterly end of Bergen cut, and about four minutes' run from Jersey City station, at the speed that the train was then going, or about a mile or a mile and a half, the head brakeman on the train opened the traps—that is, the trap doors, which, when lowered, extend the platforms of the vestibule cars over the steps leading down from the platforms of the cars.

It is also uncontroverted that the plaintiff fell from the south side of the platform of one of the coaches and was found at a point about four or five blocks from Jersey City station, a very short distance from it.

At the conclusion of the plaintiff's case, a motion was made to nonsuit on the ground that no negligence had been shown on the part of the defendant, and at the close of the whole case the defendant moved for a direction of a verdict in its favor, on the same grounds as the motion for a nonsuit was rested, and also on the further ground that there could be no recovery because of section 39 of the General Railroad law. *Pamph. L.* 1903, *p.* 666.

Both these motions were refused, and upon this judicial action error has been assigned.

The declaration alleges as negligence, failure to close the traps after leaving Newark, and also failure to keep the platforms lighted and to close the traps upon the departure of the trains from Newark, and to keep them closed until arrival at the Jersey City station.

The uncontroverted proof is that the traps were closed after leaving Newark. The ground of recovery, if such there be, is therefore limited to the failure to keep the traps closed until arrival at the station in Jersey City.

While no rule or regulation was proved prescribing the time when the traps and doors should be opened before the arrival at the terminal station, yet it was in proof, brought out by the plaintiff, that if the employes waited until the trains got into the station, there would not be time to open the traps to let the people off. No contradiction was made of this fact.

The question is therefore narrowed down as to this, whether the company was negligent in having the traps open at the time and place when and where the accident occurred—that is, at a point four or five blocks from the terminal station of the railroad, at which all passengers were obliged to alight from the train.

It does not matter, so far as the plaintiff is concerned, whether they had been opened and remained opened before the time and place of the accident, for· if it was not negligent to have them open at the place of the accident, then the fact that they had been opened and remained open before that would be immaterial.

The plaintiff's case under the proofs rested finally as follows: The injury occurred within four or five blocks of the terminus of the route, a point where every passenger must finally leave the train. At the point of time when the injury occurred the traps were open. The injury would not have occurred if the plaintiff at that time had not been upon the platform.

It is quite evident that the doctrine *res ipsa loquitur* cannot be applied to this case.

The question then arises, Was there sufficient proof on the part of the plaintiff to sustain the onus placed upon him and thus carry the case to the jury? The only act spoken of as negligent is the suffering of the traps to be open at the time, place and under the circumstances shown by the case.

In this connection, it is necessary to examine the effect of section 39 of the General Railroad law. *Pamph. L.* 1903, *p.* 666.

The statute reads as follows:

"In case any passenger on any railroad shall be injured by reason of his going or remaining on the platform of a car or any baggage, wood or freight car, in violation of the printed regulations of the company posted up in a conspicuous place inside of its passenger cars on the train, such company shall not be liable for the injury; provided, said company at the time furnished seats inside its passenger cars sufficient for the proper accommodation of its passengers."

Before discussing this question, we will digress for a moment to dispose of the objection put forth by the plaintiff. He denies *in toto* the applicability of this statute to a passenger train composed of vestibuled cars, and cites *Railway Company* v. *Glover*, 92 *Ga.* 132, in support of his contention. That case holds, in effect, that while a railroad company is not under obligation to provide vestibuled trains, yet when it has done so, the presence of such appliances is a proclamation by the company that it has provided its passengers with a safe means of passing from car to car, and an invitation for them to use the appliances for their convenience or necessity, and that it is negligence therefore to leave a vestibule connection between two cars without light and with the door open. See, also, *Bronson* v. *Oakes*, 76 *Fed. Rep.* 734; *Hutch. Carr.*, § 927. We think this reasoning has no application to the case in hand.

In the face of the rules of the company authorized by the statute above quoted, it will not be presumed from the use of vestibuled cars that a passenger is impliedly invited to pass at will from car to car. An implied invitation cannot exist contrary to statutory enactment or valid express regulations to the contrary. If such invitation can be inferred, it must be limited to the terms of and the exceptions contained in the statute, and the rules promulgated thereunder, and be consistent with them.

The regulations of the company in the act prescribed were proved to have been conspicuously posted in the passenger cars, stating that "Passengers must keep off the platform until the train stops."

Having thus disposed of the plaintiff's denial of the pertinency of the act, we return to a consideration of the effect of the statute upon the question of negligence.

The statute, taken in connection with the posted notices of the regulations of the company, grants to the company immunity when these rules are violated, and in effect prohibits the use of platforms by a passenger upon a moving train.

There is but one exception to the statute, and that is, it gives the right to the passenger to pass from car to car in quest of a seat in cases where the company has failed to furnish seats, inside its passenger cars, sufficient for the proper accommodation of its passengers.

In the case in hand, the only duty owed by the defendant, covered by the circumstances of this case, was the duty to use due care to have the vestibule or platform reasonably safe for the legitimate and proper use of the passenger.

Now, under the act above cited, and the posted regulations authorized by it, the only use which the passenger could legally make of the vestibule was to pass from car to car for the purpose of obtaining a seat, under the conditions mentioned in the statute.

The act of opening the traps is alleged as negligence not a distinct legal wrong. Negligence arises from and consists in the violation of a duty owing by the defendant to the plaintiff. In such cases, the result must be so connected with the act that according to the ordinary course of events, a reasonable man should have foreseen, not indeed that the precise consequence which actually happened would be likely to occur, but that some injurious result might follow as a sequence to him to whom the duty was due. *Chicago West Division Railway* v. *Rend,* 6 *Ill. App. Rep.* 243.

We have seen that the only duty devolving on the defendant was to keep the platform safe for the passengers rightfully there, and that its use was limited to those passing from a car,

in which the company had failed to provide sufficient seats, to another car in order to obtain a seat.

It was not to be presumed that a passenger within four or five blocks of the end of his journey would pass from car to car for this purpose. There was no proof that passengers were accustomed to do so.

"As the duty imposed by law has reference to the man of ordinary intelligence, capacity and prudence, so in the absence of any intimation fixing with notice of a higher degree of care, his actions are blameless, if governed by that care and caution which would be sufficient in ordinary circumstances." *Bev. Neg. L.* 17.

The testimony was uncontroverted as to the necessity for opening the traps before arrival at the station and the resulting inference of the existence of that practice.

In *Titus* v. *Bradford, &c., Railroad Co.,* 136 *Pa. St.* 618, the testimony showed the custom of the company to perform the work in the way complained of, and the court there said, quoting *Northern C. Ry. Co.* v. *Husson,* 101 *Id.* 1: "It was certainly a part of the duty of the plaintiff to affirmatively establish that the loading of the cars in the manner complained of was an unusual occurrence," and held that in the absence of such evidence a direction for the defendant was proper.

There must be proof of facts warranting the inference that the open condition of the traps ought reasonably to have been anticipated by the defendant as likely to result in injuries to passengers, at the time and under the circumstances existing.

The case is barren of such facts. The open condition of the doors and the traps does not raise the inference that a reasonably prudent man should have foreseen that a passenger under these conditions would have been likely to . pass through the vestibule for the purpose stated, in the absence of proof to show it. The principle is somewhat illustrated by the case of *Prosser* v. *West Jersey and Seashore Railroad,* in this court, in 43 *Vroom* 342, where it is said: "Negligence in the performance of a duty to use due care to provide for the safety of another cannot be imputed unless the facts proved will fairly support the inference that the duty existed."

This case was approved by the Court of Errors and Appeals in 46 *Vroom* 614, in sustaining a judgment of nonsuit, where it was further stated that the sole question presented is whether it could reasonably have been concluded that the servants of the defendant company knew or ought to have known that the act would be likely to injure someone.

In *Meyer* v. *Benton (Court of Errors and Appeals)*, 45 *Vroom* 533, it was held that the defendant's liability depended upon the question whether injury to the plaintiff, or to a class of which the plaintiff was one, ought reasonably to have been anticipated, and a reversal resulted because of the absence of evidence to that effect. See, also, *Wiley* v. *West Jersey Railroad Co.*, 15 *Id.* 247.

We conclude therefore that for lack of proof of facts showing that it was within the reasonable anticipation of a prudent man that passengers under the conditions displayed by this case would be passing through the vestibule in search of seats when about to conclude their journey and leave the train, the plaintiff failed to support the burden resting upon him, and there should have been binding instructions given to the jury.

In accordance with these views, there must be a reversal of the judgment to the end that a *venire de novo* may issue.