43 N.J. Super. 289 (1957)
128 A.2d 498
JOSEPH JAMES IMRE, PLAINTIFF-APPELLANT,
v.
RIEGEL PAPER CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1956.
Decided January 11, 1957.
*291 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank G. Schlosser argued the cause for appellant (Messrs. Mackerley and Friedman, attorneys).
Mr. Robert Shaw argued the cause for respondent (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
During his lunch hour at midday on May 28, 1951 the plaintiff, a young man of 33 years of age, became the victim of a most unfortunate and exceedingly injurious and painful mishap. In the pursuit of our present appellate function we must accredit his testimonial narrative of the conditions and circumstances accompanying and surrounding the misfortune.
Adjacent to the Delaware River in the village of Milford, Hunterdon County, the defendant has a tract of land upon which it maintains its manufacturing plant. Approximately one-quarter of a mile southerly from its factory it has during several years utilized a portion of a large open area contiguous *292 to the bank of the river as a site for the surface incineration of the debris and waste products of its manufactory. The useless materials were currently transported to the location by means of motor trucks and there ignited by its servants.
The area of which we speak is situate between the river and Frenchtown Road, along the westerly side of which highway extends a wire fence of the defendant with a gate through which the trucks enter and then traverse a winding roadway on the property to the dumping locality neighboring the river bank.
As a result of this practice, the so-called "dump" had reached a length and breadth of some 300 feet, and its surface an elevation of 10 to 15 feet above the level of the river at its adjacent bank. The sections which were thought to be burned out were covered by "fly ash," coal ash, from the mill's boilers.
The plaintiff was one of the many employees of the defendant regularly engaged in service in the chemical mix department in the defendant's factory. His lunch hour recess from work was from 12 noon until 1 P.M. He customarily supplied his own box of lunch. The atmosphere in the factory and in its immediate vicinity was permeated by a gaseous aroma of chlorine, said he, and when the weather was propitious it frequently became his recreational convenience during the recess hour to take his car containing his lunch and fishing rod and bait, travel to and through the company's land to which reference has been made, to the shore of the river where food would to him be more palatable and fishing more refreshing.
Such was his chosen pursuit during the noon hour of May 28, 1951. He had motored from the factory southerly on Frenchtown Road, entered the open gate and parked his vehicle near the dumping area whence he proceeded on foot to cross a section of the dump which from his observations had apparently burned out and its ash surface solidified. He had arrived close to the river's edge when the surface of the dump caved in beneath him, submerging his body up to the waist in a pit of unextinguished hot embers. He sustained *293 serious bodily injuries. His resultant medical expenses and wage losses are said to approximate $12,000.
To this summary of the characteristic aspects of the mishap should be added the supplementary information that the plaintiff, conceiving that the defendant was legally accountable to him for the cause and harmful consequences of the disaster, petitioned the appropriate administrative bureau for the allowance of the statutory workmen's compensation. The Deputy Director of the Division of Workmen's Compensation resolved that in the factual circumstances disclosed by the evidence, the accident did not arise out of or in the course of the petitioner's employment and dismissed the petition. No appeal was taken from that determination.
The present action was thereupon instituted and prosecuted in the Law Division of the Superior Court, Warren County, in the endeavor to establish the common-law liability of the defendant for the alleged negligent causation of the mishap and its injurious consequences to the plaintiff as a member of the public.
At the conclusion of the introduction of the testimony by and on behalf of both parties, the court in response to a motion made by the defendant's attorney granted final judgment in favor of the defendant, which was entered on March 19, 1956 and from which the plaintiff now appeals.
A feature of the appeal relates to the effectiveness in the present action of the fact findings of the deputy director in the proceedings conducted in the Workmen's Compensation Bureau. Following the dismissal of the compensation claim, counsel for the company applied to the court to augment the pretrial order in the present action to embody an assertion of the defenses that (1) "The judgment of the Workmen's Compensation Bureau as to plaintiff's relationship to defendant and his status upon the lands of the defendant at the time of the accident is res adjudicata of those issues in this case"; (2) "that plaintiff's right of recovery, if any, against defendant for his injuries was in the Workmen's Compensation Bureau, whereby this Court is without jurisdiction to award damages."
*294 On the bases of those proposed defenses an accompanying motion was made for a summary judgment in favor of the defendant. Proposed amendment (1) was granted; amendment (2) was denied. The application of the defendant for a summary judgment in its favor was denied "without prejudice to defendant to renew the same at or during the course of the trial."
It may be promptly stated that the contention that the adjudication in the Compensation Bureau forbade the prosecution of the present action at law occasions no serious cogitation. Indeed, the prior adjudication supports the maintenance of the common law action. Where there is a right to compensation under the statute, the remedy thereby afforded is exclusive, but where the injury or the circumstances of its occurrence do not come within the embracive terms of the act, the compensation legislation does not constitute a bar to a common-law suit for compensatory damages. Smith v. International High, etc., Co., 98 N.J.L. 574 (E. & A. 1923); Downing v. Oxweld Acetylene Co., 112 N.J.L. 25 (Sup. Ct. 1933), affirmed 113 N.J.L. 399 (E. & A. 1934); Estelle v. Board of Education of Borough of Red Bank, 26 N.J. Super. 9, 26 (App. Div. 1953), modified on other grounds, 14 N.J. 256 (1954); 2 Larson, Workmen's Compensation, § 65.10. Cf. Wilford v. Sigmund Eisner Co., 13 N.J. Super. 27 (App. Div. 1951).
The basis of the Bureau's determination was that at the time of the occurrence of the accident the petitioner was not engaged in the pursuit of his employment by virtue of a then existing relationship of employer and employee. True, the deputy director did expressly resolve that the petitioner was where he "had no right to be" under his employment.
The pivotal questions addressed to us for solution implicate the amplitude of the duty of care owed by the defendant to the plaintiff in the conditions, situation, and circumstances disclosed by the evidence, and, secondly, the existence of competent evidence, if any, which might rationally cause fair-minded jurors honestly to differ concerning the defendant's alleged infraction of that duty. The conventional *295 considerations governing a motion for a judgment at the conclusion of the introduction of the evidence are inventoried in Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951).
Yes, we recently discussed the so-called "attractive nuisance doctrine" in its transformed application to injured infant "tolerated trespassers" in Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956), but that decision seemingly has little factual relevancy here except to illustrate that the modern, more pragmatical, decisional law regarding the protection of certain classes of intruders on the lands of another is reducing the precedential impressiveness of the much earlier decisions, and shrinking the former immunities of the possessors of land.
In the present instance the plaintiff was not allured to enter the defendant's premises by the burning debris, nor was he an infant. However, the doctrine enunciated in Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890), relative to the responsibility for the maintenance of a dangerous agency is familiar. The concept that human safety, even that of trespassers, is of more serious concern than unrestricted freedom in the use of land has achieved progressive ascendancy in our social policy and responsively in the reformation of our statutory and decisional law. In general, the evolution has been toward placing upon the owner or occupier of land a legally recognizable duty of care in the artificial uses of the premises commensurate with the demands of reasonable foresight for harm. See, Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 45 (1952); Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956); Tahan v. Wagaraw Holding Co., 28 N.J. Super. 436 (App. Div. 1953), certification denied 14 N.J. 599 (1954); Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222, 233 (App. Div. 1955); Prosser on Torts (2d ed. 1955), pp. 432 et seq.; 2 Harper and James, The Law of Torts (1956), pp. 1435 et seq.
*296 Those recent opinions in our jurisdiction have made hospitable references to the legal responsibility of the owner and occupier of land expressed in §§ 334 to 339 inclusive of the Restatement of the Law of Torts, which Judge Conford in Hoff v. Natural Refining Products Co., supra, characterized as a "comprehensive scheme for formulation of the degree of liability of landowners for bodily injury to any trespasser, sui juris or not." Judge Conford discerned in the cited sections of the Restatement "a gradation of liability to trespassers, whether or not children, dependent on the kind of activity or condition maintained, the extent of the area of danger known to be the subject of trespass, and the nature of the landowner's warning to such trespassers."
The permission or consent to enter given to one by the possessor of land is the intrinsic characteristic of the status of a licensee. Fundamentally, it is the possessor's consent to enter that distinguishes the licensee from the trespasser. Perhaps the plaintiff assumed that since the owner of the premises was his employer, the latter would not have objected to his casual ingressions, but that personal faith is not the equivalent of consent.
There was no evidence whatever of the bestowal upon the plaintiff of any express consent and no factual proof sufficient logically to generate a belief in the existence of the defendant's consent by implication. See, Restatement, Torts, § 330, p. 893.
We shall recognize the plaintiff at the time to have been in view of the pertinent facts and law a trespasser. Certainly it may be at once acknowledged that the defendant did not incur the obligations of an insurer of his safety, but assuredly contingent upon the existence of some circumstances the defendant might owe to the plaintiff as such, a degree of cautious protection from bodily injury.
What, then, were the coincident conditions and circumstances logically inferential from the testimony possessing the most favorable import in aid of the plaintiff's alleged cause of action? We shall summarize it in that aspect.
*297 Concededly, the defendant for its own private benefit, in furtherance of its industrial enterprise and in the advantageous development of the grade of its spare property, assumed the practice of disposing of its waste materials by fire. The "dump" became progressively enlarged by the daily deposits of debris at the northerly, easterly, and southerly sides of the area. It may be inferred that the spaces of the dump in which the burning had sufficiently declined were customarily supplied with a cover or crust of coal ash from the boilers of the factory to await the natural and ultimate extinguishment of the underlying fires.
Our courts have not been inattentive to the maxim sic utere tuo ut alienum non laedas in the operation and maintenance of highly dangerous agencies and instrumentalities. The use of fire, unless reasonably attended and regulated, is dangerous. Piraccini v. Director General of Railroads, 95 N.J.L. 114 (E. & A. 1920); Strang v. South Jersey Broadcasting Co., 10 N.J. Super. 486, 490 (App. Div. 1950), affirmed, supra; Cole v. Thompson, 27 N.J. Super. 561, 564 (App. Div. 1953), certification denied 14 N.J. 465 (1954). In the law the adjective "dangerous" has a close acquaintance with "foreseeability of harm," which latter element constitutes the basis of legal liability and denotes the dimensions of the duty of proportionate care.
The most problematical component of the present appeal appertains to the presence, vel non, of any evidence in the case of facts which by the actual information thereof, or by knowledge thereof which it ought to have acquired from its reasonable supervision of the premises, should have caused the defendant to foresee the likelihood of such an injurious mishap.
Conspicuous in the modern patterns of the several pertinent sections of the Restatement in their application to trespassers are the factual essentials that (§§ 334, 335) "a possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude"; (§ 336) "a possessor of land who knows that *298 another is trespassing thereon or from facts known to him should know or believe that another is or may be doing so"; (§ 337) "* * * if (a) the possessor knows or, from facts within his knowledge, should know of their presence in dangerous proximity to the artificial condition and (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved therein."
Noticeable in the opinion rendered by the Supreme Court in the Strang case, supra, is the following expression:
"* * * The principle is generally deemed operative in favor of trespassers on land if the presence of the particular trespasser be discovered, or the possessor of the land be aware of constant trespassing upon a particular place or a limited area and the act is likely to cause death or serious bodily harm."
It is immediately observable that in this enlargement of the legal responsibility of a possessor of land to trespassers, proof of the actual or constructive knowledge by the possessor of the latent dangerous nature of the condition artificially created and maintained in its relation to trespassers is an indispensable element of the cause of action. Evidence of that factual essential must exceed the proportions of a mere scintilla. Sivak v. City of New Brunswick, 122 N.J.L. 197 (E. & A. 1939); Gentile v. Public Service Coordinated Transport, supra.
We have accordingly searched the transcript of the evidence in the present case in quest of some preceding factual occurrence, circumstance, or experience which should have reasonably inspired the defendant to anticipate that either the plaintiff or an adult intruder such as the plaintiff would endeavor to walk across the top of the dump. There was no evidence whatever that any one other than the plaintiff and one other ever followed that adventurous course over the obvious dump to the river bank.
True, there was evidence that over the adjacent range of farm land persons, probably trespassers, were occasionally observed to be hunting game; none, however, on the top *299 of the dump. Moreover, there was no evidential support for the impression that persons other than the plaintiff sought habitually and noticeably to fish from the shore of the river at a location beneath the embankment of the dump. Vide Restatement, Torts, § 334, comment (c) at p. 906, re roamers at large on possessor's land.
The physical conditions forensically magnified by counsel for the plaintiff are the proximity of the river, the open gate, the visible roadway and, more significant, the pedestrian path of two feet in width and "well beaten" by which the plaintiff is said to have been guided to the edge of the dumping area. The continued existence of the clearly apparent path to the dumping ground was, it is argued, an inviting accommodation to trespassers to make use of it in their excursions to the river, and of this endangering enticement the defendant had, or should have had, knowledge and thus foresight of the likelihood of serious bodily harm to one who might enter the limited dangerous area.
In measuring the defendant's foresight in that particular, it must be realized that while the path was visible, even more so was the dumping ground, an area which was not shown to have been a place upon which persons, if any, constantly and persistently trespassed or would be expected to do so.
The dumping ground itself was within a fenced-in tract and located thereon at a place remotely distant from the public highway. The gate was left open during the day solely for the admittance of the defendant's trucks. The evidence did not indicate that trespassers were in the habit of entering through the gate.
It is claimed that the burning of debris in such an environment created such an unreasonable risk of serious bodily injury to probable adult trespassers that the defendant should have anticipated the occurrence of the mishap suffered by the plaintiff. Proof of the mere burning of refuse at such an isolated and secluded location does not carry within itself an inference of expectation of serious bodily harm. Indeed, in the light of the evidence of past events, *300 the plaintiff committed a reasonably unexpected act  a venturesome attempt to walk across the dump as a "short cut" to the river.
Our courts ought not in response to sympathetic emotions unjustly to stretch the legal responsibility of the owner or occupier of land to adult trespassers unless the basic essentials of such liability in the modern acceptation of the law are established in a prima facie logical import by the evidence. We resolve that the evidence in the present case lacked that requisite adequacy, particularly in the essential element of foresight for serious bodily harm.
It is asserted that the apparent improvident conduct of the plaintiff was nevertheless a subject for the determination of the jury. Certainly where there is no proof of actionable negligence for which the defendant can be in the law held responsible, the question of the existence of a voluntary assumption of the risk and of the contributory negligence of the plaintiff is immaterial. Freschi v. Mason, 108 N.J.L. 272 (E. & A. 1931); Cohen v. Borough of Bradley Beach, 135 N.J.L. 276 (E. & A. 1947).
After a comprehensive study of the evidence in the light of the present state of the prevailing principles of law, we conclude that the judgment should be affirmed.