CHARLES J. LAPOLLO AND CHARLES P. LAPOLLO, PLAINTIFFS–RESPONDENTS, v. HOSPITAL SERVICE PLAN OF NEW JERSEY, A/K/A NEW JERSEY BLUE CROSS PLAN, A/K/A BLUE CROSS OF NEW JERSEY AND MEDICAL SURGICAL PLAN OF NEW JERSEY, A/K/A NEW JERSEY BLUE SHIELD PLAN, A/K/A BLUE SHIELD OF NEW JERSEY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, DEFENDANTS–APPELLANTS.

Argued October 12, 1988—Decided January 25, 1989.

*Dennis R. LaFiura* argued the cause for appellants (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Dennis R. LaFiura, Donald W. Kiel,* and *Gary S. Margiotta,* on the briefs).

*Philip L. Faccenda* argued the cause for respondents.

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the meaning of a standard clause in a New Jersey Blue Cross and Blue Shield hospital and surgical plan (Blue Cross/Blue Shield) that excludes from coverage certain claims covered by other medical reimbursement programs. Usually, the employer arranges such coverage and the

subscriber has little to do with the terms of the contract.[1] The clause at issue excludes coverage when there is an available workers' compensation remedy.

Workers' Compensation (workers' comp) provides a comprehensive system of reparation for people who suffer accidental, work-related injuries. Its theory and purposes have been reviewed in recent decisions, *Eger v. E.I. du Pont deNemours Co.*, 110 *N.J.* 133 (1988); *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161 (1985). It provides coverage for the worker's lost income and medical expenses as well as damages for any permanent injuries suffered by the worker. For most workers, it is the only available remedy and therefore the *exclusive* remedy. Thus a worker who suffers an injury arising out of and in the course of employment will ordinarily be precluded from instituting a tort action against his employer, but will have hospital and doctor bills paid by the workers' comp carrier. Most employers purchase insurance to provide these benefits.

For minors, however, the Legislature has provided not an exclusive remedy in workers' comp but a *choice* of remedies. An injured minor can claim reimbursement from the employer either through a common-law tort action or through the Division of Workers' Compensation. *N.J.S.A.* 34:15–10. Each forum has advantages and disadvantages. The workers' comp program is a no-fault program—all the minor need do is prove the extent of the injury and its connection to work. Under certain conditions a case may be reopened if the condition worsens. *N.J.S.A.* 34:15–27. But the benefits are limited to a prescribed schedule and are usually less generous than the awards possible in a common-law tort action.

---

[1]We will use the expression "subscriber" to refer generally to employees and family members covered by an employer health plan. We shall also refer to the plan as a "carrier," although such plans are usually not so much insurance plans as they are employee benefit programs. We are informed that the plan here covers various medical services and includes major medical coverage.

In contrast, the potentially higher benefits available through the common-law tort action are conditioned on proof of the employer's fault or other misconduct. An injured minor (realistically the minor's lawyer) has to balance the certainty, security, and continuing nature of the workers' comp benefits with the riskier prospects for a one-shot, albeit dramatically greater, tort recovery.

In this case the minor was severely burned while working around a deep fat fryer. He had over $70,000 in medical expenses as a result of his injury. He would be covered for these expenses either under his father's Blue Cross/Blue Shield policy, absent the exclusionary clause, or under workers' comp. Workers' comp would have paid all necessary medical expenses plus a certain amount in compensation for his injuries, *i.e.*, a scheduled award for lost wages and benefits calculated according to the injury sustained and any attendant neurological effect. *See Poswiatowski v. Standard Chlorine Chem. Co.*, 96 *N.J.* 321 (1984).

The minor in this case instead chose to pursue the common-law tort remedy against his employer, Ponderosa Steak House (Ponderosa). Initially, his hospitalization benefits had been paid, as they generally are, by the employer's compensation carrier. Apparently this money was refunded to the compensation carrier before the conclusion of the civil litigation. While the civil litigation was still pending, the minor asked Blue Cross/Blue Shield to pay for his "medical, surgical and hospital bills and expenses." Blue Cross/Blue Shield refused and this suit ensued.

The trial court, on cross-motions for summary judgment, granted plaintiff's motion and denied Blue Cross/Blue Shield's motion for summary judgment. The court, quoting *Hunt v. Hospital Service Plan of New Jersey*, 33 *N.J.* 98, 102–03 (1960), reasoned that the clause excluding Blue Cross/Blue Shield coverage was "of doubtful import [and should be] strictly construed against the insurer," because it was unclear whether

the minor may be forced to elect either a tort claim or medical compensation. The court ruled that the minor's claim did not fall within the exclusionary clause and that the expenses were covered under the Blue Cross/Blue Shield policy. On appeal, the Appellate Division affirmed, also reasoning that the language of the exclusionary clause was ambiguous in not clarifying its relationship to the "injured person's primary remedy" in workers' comp. 220 *N.J.Super.* 243, 248 (1987). The Appellate Division concluded that "a subscriber would be objectively reasonable in not expecting that the Blue Cross/Blue Shield benefits would be lost under the exclusionary clause by the election of the common-law remedy or that the right of election would be burdened by that loss." *Id.* at 249. The Appellate Division, observing that the special status given to working minors by the Legislature under *N.J.S.A.* 34:15–10 demonstrated a preferential policy for minors, upheld the award despite a possible double recovery of medical bills by the subscriber. *Id.* at 248–50. We granted the carrier's petition for certification. 110 *N.J.* 162 (1988).

The legal arguments are not complex. We are now informed that the minor settled his third-party claim. The subscriber, having foresworn his compensation remedy, claims, "I no longer have an available workers' compensation remedy so you must pay my hospital and doctor bills." The health service plan rebuts, "but you had an available remedy when you incurred the medical services." Each side claims victory based on canons of construction. The subscriber says the clause is ambiguous because it does not indicate when the remedy has to be available, and therefore it must be construed against the insurance company. Blue Cross/Blue Shield, however, says nothing could be plainer than the language of the policy, and that the minor had an "available remedy" under workers' comp but simply chose not to take it. The insured having made the choice, Blue Cross/Blue Shield asserts that he should be bound by that choice.

■ In *Hunt v. Hospital Service Plan of New Jersey, supra,* this Court, interpreting the predecessor to the current exclusionary clause, held that language that excluded benefits "compensable" under workers' comp excluded only benefits that were actually paid. *Hunt, supra,* 33 *N.J.* at 104–05. In response, Blue Cross/Blue Shield amended its policy by inserting the disputed exclusionary clause, which states:

> We do not provide benefits for services rendered for any disease, injury or condition arising out of and in the course of employment for which benefits and/or compensation are available in whole or in part under the provisions of any Workers' Compensation Law, Occupational Disease Law, or any similar law including any foreign law.

> This exclusion applies whether or not a proper and timely claim for compensation for these services is made under these laws, whether or not benefits are received for these services and whether or not any recovery is received by you against a third party for damages resulting from the condition, disease or injury.

■ It strikes us that there is little ambiguity in this clause. However, the fact that an exclusionary clause in an insurance policy is unambiguous does not make it necessarily enforceable. Rather, we believe, as the Appellate Division did, that resolution of the effect to be given to the clause should depend on the governmental policies affecting personal injury claims reparations. Even the plainest provisions in an insurance policy must yield to a paramount public policy. *See Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* 597 (1986) (an insurance company's internal policy does not outweigh public policy); *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 336 (1985) (unambiguous contract enforced "in accordance with the reasonable expectations of the insured").

The Appellate Division viewed as a paramount policy the optional choice of reparations available to minor workers suffering work-connected injuries. Denial of the available health benefits coverage would tend to impede or impair the minor's right to elect the tort remedy. Thus the Appellate Division reasoned that the clause must yield when the minor foregoes

the available worker's comp remedy to pursue the potentially higher benefit track.

Here, we believe another policy mandates a different result. When the claimant has made a successful recovery in the common-law tort action, there will be a double recovery for the same expenses if the hospital services plan is required to pay again. There is no clearer policy to us than that the double recovery of reparation benefits conflicts with current legislative policy goals. *See Wilson v. Unsatisfied Claim and Judgment Fund Bd.*, 109 *N.J.* 271, 281 (1988) ("If there is one definite principle that emerges from our PIP law, policy, and precedent, it is that there shall be no double recovery of PIP benefits."); *Midland Ins. Co. v. Colatrella*, 102 *N.J.* 612, 616 (1986) ("The purpose of [worker's compensation law] is to reconcile recovery in a workers' compensation proceeding and in a common-law-tort action." (*citing N.J.S.A.* 34:15–40(b))); *N.J.S.A.* 34:15–40(b) (providing for reimbursement of employer or insurance carriers from workers' comp benefits paid); the recently enacted *L.* 1987, *c.* 326 (to be codified at *N.J.S.A.* 2A:15–97) (eliminating the collateral source rule in certain personal injury cases). Hence in the circumstances of this case, we agree that the exclusionary clause should be given its effect. There was an available remedy for the work-connected injury and it was successfully pursued in the common-law courts.

We are not called on to resolve the question whether an unsuccessful common-law action against the employer forecloses the availability of hospital-surgical benefits coverage for the necessary medical expenses. For that patient there is no longer an available workers' comp remedy. Realistically, it is the medical-provider that loses too, not just the plaintiff.[2]

---

[2]Medical providers have a special statutory lien for any recovery in a common-law tort action. *N.J.S.A.* 2A:44–37 (hospitals, doctors, dentists, and nursing homes have liens on any and all actions, judgments, awards, and settlements against third-party tortfeasors).

Although we rather suspect that there are few cases in which lawyers inadvisedly gamble on the outcome of common-law claims, it would be preferable that carriers that wish to foreclose the argument that such claims are covered by a health-benefits plan should have the policy issue addressed by their regulators. The Legislature has already expressed a rather strong preference that minor workers have benefits that are unavailable to others in the work force. Had this minor been covered under Ponderosa's hospital-surgical plan and not his father's, we might ask whether the Legislature would have intended that the injured minor surrender his health-benefits coverage in order to assert his statutory right. Under the recently-enacted "collateral source rule" amendment, it will simply no longer be possible to achieve a windfall recovery in a tort action for expenses paid by a medical services plan. Before us, counsel for Blue Cross/Blue Shield stated candidly, "What we're doing here is stopping double recovery."

We were informed at oral argument that for policy reasons the Commissioner of Insurance has declined to allow subrogation of hospital-surgical claims. But if subrogation were allowed the bills might be recoverable for the benefit of the health insurer.

The judgment of the Appellate Division is reversed and the case remanded to the Law Division for entry there of a judgment for defendants.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, GARIBALDI, O'HERN and STEIN—6.

*For affirmance*—None.