708 A.2d 1173

CYNTHIA KRISTIANSEN, ADMINISTRATRIX AND ADMINISTRA-
TRIX *AD PROSEQUENDUM* OF THE ESTATE OF KYLE
KRISTIANSEN, DECEASED AND CYNTHIA KRISTIANSEN,
INDIVIDUALLY, PLAINTIFF–APPELLANT, v. ROBERT W.
MORGAN, CITY OF PERTH AMBOY, DEPARTMENT OF PUB-
LIC WORKS IN THE CITY OF PERTH AMBOY, ROAD DE-
PARTMENT OF THE COUNTY OF MIDDLESEX, AND THE
COUNTY OF MIDDLESEX, DEFENDANTS, AND STATE OF
NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DE-
FENDANT–RESPONDENT.

CYNTHIA KRISTIANSEN (WIFE), ON BEHALF OF KYLE KRIS-
TIANSEN (DECEASED), PETITIONER–APPELLANT, v. STATE
OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, RE-
SPONDENT–RESPONDENT.

Argued October 7, 1997—Decided March 12, 1998.

300

*Bruce Regenstreich,* argued the cause for appellant (*Callan, Regenstreich, Koster & Brady,* attorneys).

*Patricia A. Schiripo,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

This is a workers' compensation case in which the parties have taken reverse factual and legal positions. The injured worker, through his personal representative, is denying that an accident arose out of and in the course of employment with the New Jersey

Department of Transportation (NJDOT) in order to escape the exclusive remedy rule of the New Jersey Workers' Compensation Act (Act), *N.J.S.A.* 34:15–1 to –128, while the employer is admitting the compensability of that accident. The employee's representative filed a wrongful death action in the Superior Court as well as a claim petition with the Division of Workers' Compensation (Division). The core question presented is whether plaintiff should have been obligated to litigate first in the Division whether such a claim by an employee or the employee's personal representative against the employer falls within the coverage formula of the Act.

The Superior Court held that it had concurrent jurisdiction to decide the issue and refused to defer to the Division. The Appellate Division held that although the Superior Court has concurrent jurisdiction to decide compensability issues under some circumstances, the Superior Court should have decided as a matter of law that the accident in this case was compensable.

We hold that under the facts presented, the Division had primary jurisdiction to decide whether the claim presented by the personal representative against the employer was compensable. We agree with the Appellate Division that, as a matter of law, the accident here was compensable.

I

This case arises from the tragic death of Kyle Kristiansen on October 29, 1990. On that date he was employed by NJDOT as a bridge operator. He was one of three bridge operators assigned to the Victory Bridge that spans the Raritan River from Perth Amboy to Sayerville and forms a part of a north-south state highway known as Route 35. It is owned, maintained, and controlled by NJDOT. The bridge roadway consists of four travel lanes, two northbound and two southbound, divided by a solid double-yellow line. Sidewalks protected by guardrails run along both sides of the bridge. Although the bridge itself does not have a crosswalk or traffic light, there is a traffic signal located at the

intersection of Smith Street and Route 35 on the Perth Amboy side of the bridge.

As a bridge operator, decedent was responsible for opening and closing the drawbridge for seagoing vessels. The operators worked in three "shacks" located on the bridge. The drawbridge portion of the bridge and the shacks are located approximately mid-span. The only means of ingress and egress to the shacks is by foot on the pedestrian walkways on the bridge.

NJDOT employees assigned to the Victory Bridge, including decedent, regularly parked their cars in a lot located under the bridge that is owned by Hess Oil Company. In order to reach that parking lot, employees descend a wooden staircase on the northeast side of the bridge, turn right, and walk under the bridge. Although bridge employees are not required to park in the Hess lot, they have permission from NJDOT and Hess to park there.

There are also two parking lots provided by NJDOT. One is located at the intersection of Smith Street and Route 35, a quarter mile from the north end of the bridge. The other is next to the Hess lot. Bridge employees prefer to park in the Hess lot because they can see their cars from the bridge and the lot has a security guard. Cars parked in the NJDOT lots, however, are not visible from the bridge and there is no security system. In any event, no matter which lot is used, employees must walk north on the bridge to reach their cars.

On the night of the accident, decedent worked the 3:00 to 11:00 p.m. shift with two other operators: Daniel Hohwielor and John Fraykor. At the end of the shift, decedent, Hohwielor, and Fraykor met at the northwest shack to exchange information. Then they left together, traversing the bridge on foot to reach their cars parked in the Hess lot beneath the bridge.

As decedent walked northbound along the west side of the bridge at approximately 11:15 p.m., he was wearing dark clothes and carrying a duffle bag. Over his clothes, he wore a NJDOT-

issued vest that had two reflective panels on the front and back, while the sides of the vest had no reflectorized panels and were open. At the end of the guardrail, decedent attempted to cross over the four traffic lanes of the bridge to reach the staircase located on the northeast side of the bridge. Fraykor and Hohwielor did not see decedent cross the road because they had jumped over the guardrail and crossed over Route 35 about midspan. Sadly, while decedent was crossing the four-lane roadway on the bridge, he was struck and killed in the center northbound lane by a car driven by defendant Robert Morgan. Decedent's body was propelled eighty-three feet from the point of impact. Morgan was not employed by NJDOT.

The bridge is lit by lampposts positioned 170 feet apart. On the night in question, however, the scene was described by all as extremely dark despite a clear sky and full moon. Fraykor testified that a couple of street lights were out. Morgan testified that prior to impact he could see no more than ten feet ahead of him. He also testified that he did not see Kristiansen until decedent was six to twelve inches in front of him.

Shortly after the accident, Harold and Maria Zayas came upon the accident scene as they drove northbound across the bridge. They described the bridge as dark with visibility of no more than twenty-five feet. Two police officers who responded reported that the roadway was not well-lit and that they needed a flashlight to examine the decedent. Nine of the twenty-four lights on the north side of the bridge were repaired during the two-day period following the accident.

Decedent's wife, Cynthia Kristiansen, individually and as administratrix of Kyle Kristiansen's estate, filed a wrongful death action in the Superior Court on October 24, 1991. She also filed a workers' compensation petition with the Division on March 13, 1992. NJDOT answered the complaint on April 21, 1992, without raising a workers' compensation defense. After investigating the workers' compensation petition, NJDOT commenced paying Ms. Kristiansen dependency benefits on January 12, 1993, retroactive

to the date of the accident. She also received the statutory $2,000.00 allowance for funeral expenses. Thereafter, NJDOT repeatedly sought to have the issue of compensability of the accident adjudicated by the Division.

On February 3, 1993, three weeks after commencing payments under the claim petition, NJDOT moved for summary judgment in the Superior Court, arguing that because decedent's injuries arose out of and in the course of his employment, the Division had exclusive jurisdiction pursuant to *N.J.S.A.* 34:15–8. That motion was denied on April 16, 1993. The matter was scheduled to be heard in the Division on May 3, 1993, but plaintiff adjourned those proceedings until after trial in the Law Division.

In addition, NJDOT filed a motion for summary judgment, better known as an application for summary disposition of the claim petition, with the Division. That motion was argued and denied on February 9, 1994, approximately one year after NJDOT had conceded that the accident was compensable and had commenced paying dependency benefits to the widow.

On February 17, 1994, NJDOT filed its second motion in the Superior Court for summary judgment because the earlier motion had not addressed whether the Hess lot should be deemed to be part of NJDOT's premises based on the elements of control. NJDOT requested that if summary judgment was denied, trial in the matter be delayed until after the Division had determined whether the case was compensable under the Act. Both applications were adjourned until after trial in the Superior Court, which was scheduled to commence on April 18, 1994.

Before a jury was selected, NJDOT made an oral application in the trial court to adjourn the trial until after its second summary judgment motion had been decided. Once again it sought a stay of the trial pending resolution of the issues by the Division. On April 14, 1994, the trial court granted the application to adjourn the trial until it decided the summary judgment motion, but it denied the motion to stay the trial. The next day the trial court denied NJDOT's second summary judgment motion.

A jury trial was conducted beginning April 18, 1994. At the close of plaintiff's evidence, NJDOT moved pursuant to Rule 4:37–2(b) for a directed verdict in its favor because it was shielded from a wrongful death claim by virtue of *N.J.S.A.* 34:15–8. The trial court denied the motion. It reasoned that because NJDOT neither directed nor otherwise mandated that the bridge attendants park in the Hess lot, parking there was "strictly a privilege; it was an option [rather than] a duty." The court concluded that notwithstanding creditable testimony from supervisory personnel from NJDOT that the bridge attendants not only had permission to park in the Hess lot, but that they were expected to park there because it was safer, the requirement that the employer control or supervise the Hess parking lot had not been demonstrated as a matter of law. Cross-motions were similarly denied at the close of all the evidence. *See R.* 4:40–1.

The jury found that decedent's accident did not occur during the course of the employment. It found decedent ten percent liable, the driver of the car thirty percent liable, and NJDOT sixty percent liable, and awarded plaintiff $1,811,000.000.

NJDOT appealed both the judgment entered on the jury's verdict and the decision of the Judge of Compensation deferring to a Superior Court jury to decide whether the accident arose out of and in the course of decedent's employment. In the Appellate Division, plaintiff and NJDOT agreed that the Division has exclusive jurisdiction over an injury compensable under the Act. The parties disagreed, however, over which court should exercise its jurisdiction to decide the statutory applicability issue.

In an unpublished opinion, the Appellate Division concluded that, based on the evidence presented at trial, the trial court should · have concluded as a matter of law that, because the accident occurred on the employer's premises, the accident occurred during the course of employment within the intendment of *N.J.S.A.* 34:15–36. We granted plaintiff's petition for certification, 148 *N.J.* 462, 690 *A.*2d 609 (1997), and now modify and affirm.

## II

Plaintiff argues that the issue whether the accident occurred in the course of decedent's employment was a question of fact properly within the jurisdiction of the Superior Court. She maintains that the jury correctly concluded that decedent's accident did not arise out of and in the course of employment because it did not occur in an employer controlled area. According to plaintiff, NJDOT owns all roadways in the State; therefore, the bridge roadway could not be decedent's place of employment. Plaintiff asserts that because NJDOT neither owned nor authorized bridge employees to park in the Hess lot, this too could not be considered part of NJDOT's premises. Finally, plaintiff maintains that once decedent punched out and left the bridgehouse, he was no longer on the employer's premises and was not engaged in any work-related activities at the time of his death.

NJDOT argues that the Division had primary jurisdiction to decide the compensability issue. It argues further that although it controls most of the roadways in the State, the bridge roadway was part of decedent's place of employment. It conceded that it authorized its employees to park in the Hess lot. NJDOT contends, therefore, that because the accident was compensable as a matter of law, the wrongful death complaint should have been dismissed pretrial. We agree with NJDOT's positions.

### -A-

The statutory exclusivity defense under the Act asserted by NJDOT to the wrongful death action relates to whether an employer is shielded from a common-law negligence suit. The specific statutory defense that shields the employer from common-law actions provides that the employer's and the employee's agreement, pursuant to *N.J.S.A.* 34:15-7, to be bound by the Act,

shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in [the Act] and an acceptance of all the provisions of the [Act], and shall bind the employee and for compensation for the employee's death shall bind the employee's

personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.

[*N.J.S.A.* 34:15-8.]

The same statute creates a fellow-servant defense in the following manner:

If an injury or death is compensable under [the Act], a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

[*N.J.S.A.* 34:15-8.]

Our analysis of whether the Superior Court had concurrent jurisdiction in this case must begin with *Wunschel v. City of Jersey City,* 96 *N.J.* 651, 477 *A.*2d 329 (1984), because it involved an assertion of the *N.J.S.A.* 34:15-8 defenses by both the employer and a fellow-servant. There, the widow of a deceased police officer filed both a wrongful death complaint and a petition for workers' compensation benefits against decedent's regular employer, the Jersey City Police Department, and the employer for whom decedent was moonlighting at the time of his death, A.A.A. Uniforms. *Id.* at 656, 477 *A.*2d 329. Arnold Sachs, a fellow police officer who shot Wunschel while in the moonlighting employer's store, was also named as a defendant in the wrongful death action. *Ibid.* The Division found that the death arose out of and during the course of employment with A.A.A. Uniforms and not the police department. *Id.* at 657, 477 *A.*2d 329. The wrongful death action against the police department was dismissed for failure to comply with the notice provision of the Tort Claims Act, *N.J.S.A.* 59:8-8. *Wunschel, supra,* 96 *N.J.* at 657, 477 *A.*2d 329. The tort action was dismissed against A.A.A. Uniforms because the finding of compensability shielded it from tort liability pursuant to *N.J.S.A.* 34:15-8. *Wunschel, supra,* 96 *N.J.* at 657, 477 *A.*2d 329. A jury trial was conducted in the Superior Court against the fellow policeman who shot Wunschel, limited to whether the shooting arose out of Wunschel's employment with either the police department or A.A.A. Uniforms. *Ibid.*

At the conclusion of the presentation of all of the evidence in the case, the trial court ruled, as a matter of law, that Wunschel's death arose out of and in the course of his employment as a Jersey City policeman. *Ibid.* It dismissed the wrongful death claim against the fellow officer based on the fellow-servant defense, *N.J.S.A.* 34:15–8. *Ibid.* Thus, the Division and the Superior Court reached the opposite result on the same factual issue. *Id.* at 658, 477 *A.*2d 329. The Appellate Division held that the inconsistent results were based on separate and distinct records. *Ibid.*

While grappling with the problem of how to proceed in such cases in the future, the Court observed that it was compelled to "consider the policies and procedures that will best serve to reduce the illogical inconsistency that this case presents." *Id.* at 663, 477 *A.*2d 329. The Court stated that it should design a procedure to " 'assure that a controversy, or its most critical facets, will be resolved by the forum or body which, on a comparative scale, is in the best position by virtue of its statutory status, administrative competence and regulatory expertise to adjudicate the matter.' " *Id.* at 664, 477 *A.*2d 329 (quoting *Hinfey v. Matawan Reg'l. Bd. of Educ.,* 77 *N.J.* 514, 532, 391 *A.*2d 899 (1978)).

Although the *Wunschel* Court found that "[t]he forum best suited to decide employment issues is the Compensation Court," it recognized that when the fellow-servant defense is implicated, the Division cannot be deemed to have exclusive jurisdiction. *Id.* at 664, 665–67, 477 *A.*2d 329. Because the fellow-police officer who shot Wunschel was not a named party to the workers' compensation proceedings, and it is doubtful that he could have been, the Division's judgment could not prevent him from litigating his fellow-servant's defense in the wrongful death action in which he was a named party. *Ibid.*

The *Wunschel* Court's solution to the dilemma of having two tribunals reach inconsistent results was to recognize permissive intervention by the fellow-servant in the proceedings pending in the Division and to have the Division determine the viability of a fellow-servant's defense to the common-law tort action. *Id.* at 668,

477 *A.*2d 329. If the co-employee failed to intervene, the judgment entered in the Division "should be entered into evidence in the Law Division [action] and accorded such weight as is appropriate." *Id.* at 666, 477 *A.*2d 329. Although the Court did not decide whether the co-worker should be bound by the Division's judgment when a co-employee elects to intervene in the Division, we believe that judgment should be binding against the co-employee based on principles of collateral estoppel and *res judicata.* Because *Wunschel* held that a co-employee raising a fellow-servant defense in a common-law action was not obligated to intervene in pending proceedings in the Division, the Court recognized that the Superior Court and the Division have concurrent jurisdiction to decide the employment issues related to the fellow-servant defense in those cases where the co-employee elected not to intervene in the Division. Once *Wunschel* recognized that the co-worker could not be compelled to intervene in the action pending in the Division, *Wunschel, supra,* 96 *N.J.* at 666, 477 *A.*2d 329, there was no other trial forum except the Superior Court capable of deciding the validity of the fellow-servant's defense. See also *Singer Shop–Rite, Inc. v. Rangel,* 174 *N.J.Super.* 442, 416 *A.*2d 965 (App.Div.) (holding Superior Court has concurrent jurisdiction to decide fellow-servant defense), *certif. denied,* 85 *N.J.* 148, 425 *A.*2d 299 (1980).

█ It follows from *Wunschel* that when there is no pending case in the Division in which a fellow servant can intervene to assert an exclusivity defense, the Superior Court must be deemed to have concurrent jurisdiction to decide those issues.

█ The issue in the present case is different from, yet related to, the employment issue raised in *Wunschel.* In that case, the fellow-servant defense was invoked in the tort action and co-employee Sachs could not have been named as a party in the Division proceedings. Consequently, absent his voluntary intervention, the Division acquired no jurisdiction to enter a binding judgment against him. The Division acquires jurisdiction over a fellow employee only if he or she elects to voluntarily submit to

the jurisdiction of the Division by intervening. But an individual alleging to be a joint or special employer may intervene in the Division as a matter of right based on the assertion of an employment relationship. *See R.* 4:33-1 (outlining the standard for intervention as a matter of right); *see also N.J.A.C.* 12:235-1.2 (permitting relaxation of rules to achieve justice). Indeed, such an individual can also be joined as a party to the pending proceedings in the Division pursuant to the Division's third-party practice. *N.J.A.C.* 12:235-5.4(a).

In the present case, decedent's representative and decedent's employer are the only parties essential to a disposition of the case by the Division. Unlike the *Wunschel* case in which a fellow servant was sued in the Superior Court, here, no issue has been raised that the Division cannot decide in a manner that is binding on all the interested parties. Decedent in this case was killed by Morgan, a stranger to NJDOT. The fellow bridge attendants Hohwielor and Fraykor have not been sued. Thus, the Division had jurisdiction over all of the parties in the present case except Morgan, who had no connection with the compensability issues, thereby conferring upon the Division the power to enter a binding judgment on the employment issues. Had it done so, such judgment would have precluded the parties from relitigating in the Superior Court the issues decided by the Division.

-B-

Plaintiff's insistence on proceeding first in Superior Court is based on two false assumptions: (1) that she was entitled to make an election whether to pursue a common-law tort action, and (2) that the Superior Court was the appropriate forum to decide whether the accident was compensable. The Legislature did not intend workers to have an election of remedies after agreeing pursuant to *N.J.S.A.* 34:15-7 to accept the provisions of the Act unless they fall within a few limited exceptions. The Act mandates that workers' compensation is the exclusive remedy for an injured employee against an employer for injuries arising out

of and during the course of employment. *N.J.S.A.* 34:15–8. That statute provides that once an employee elects to be protected by the Act, the exclusive remedy for a worker and his or her representative for compensable injuries is to pursue a claim for benefits under the Act. *Danek v. Hommer,* 9 *N.J.* 56, 62, 87 *A.*2d 5 (1952); 2 Arthur Larson's, *Workers' Compensation* § 65.10 (desk ed.1997). The personal representative of an injured worker may not bypass the Act by filing a wrongful death claim in Superior Court. Any common-law remedy, however, that is not inconsistent with the Act is generally unaffected when the Division has concluded that the injury is not compensable.

The Legislature clearly chose only three categories of workers to whom it would extend an election of whether to file a common-law tort action or a claim for benefits under the Act. *N.J.S.A.* 34:15–10 provides an election to two groups of injured employees: (1) those under the age of eighteen without proper employment certificates; and (2) those employed in violation of our child labor laws. They may elect to pursue workers' compensation benefits in the Division that are double the normal benefits, or they may file a common law negligence action in the Superior Court against the employer and a fellow worker. *LaPollo v. Hospital Serv. Plan of N.J.,* 113 *N.J.* 611, 613, 552 *A.*2d 150 (1989); *Thompson v. Family Godfather, Inc.,* 212 *N.J.Super.* 270, 276, 514 *A.*2d 875 (Law Div.1986). In addition, *N.J.S.A.* 34:15–8 permits employees to file common-law tort claims against the employer under the "intentional wrong" exception to the Act's exclusivity rule. If such claims are filed after employees have already received workers' compensation benefits, the doctrine of election of remedies does not affect the workers' common-law claims. *Millison v. E.I. du Pont de Nemours & Co.,* 101 *N.J.* 161, 186, 501 *A.*2d 505 (1985). Plaintiffs who prevail in their common-law actions after collecting workers' compensation benefits will not be entitled to keep the entire amounts because of the reimbursement requirements of *N.J.S.A.* 34:15–70. *Millison, supra,* 101 *N.J.* at 187, 501 *A.*2d 505.

To permit a worker or his or her personal representative to invoke the jurisdiction of the Superior Court by simply asserting that an accident is not compensable would have the effect of nullifying the clear legislative intent. It is beyond dispute that the Division, based on its expertise, is the forum best suited to decide whether an accident is compensable.

Similarly, neither an injured worker nor the representative of an injured worker may select which tribunal may or should decide whether an accident is compensable. The Act provides that "[t]he Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits." *N.J.S.A.* 34:15-49. Regardless of whether the employer admits or denies the compensability of an accident, the Division is the forum best suited to decide whether the accident falls within the coverage formula of the Act. The Legislature recognized that the Division, through the Judges of Compensation, is highly qualified to decide disputed factual and legal contentions related to whether an accident is compensable.

Although there are times when the Superior Court is deemed to have concurrent jurisdiction with the Division, the Division is deemed to have primary jurisdiction to decide compensability issues. Here, the Division and not the Superior Court should have decided the compensability issues.

We have applied the primary jurisdiction approach in various other contexts. *Teaneck Board of Education v. Teaneck Teachers Ass'n,* 94 *N.J.* 9, 462 *A.*2d 137 (1983), involved a school teacher's claim alleging reverse discrimination by the school board in failing to appoint him as assistant basketball coach. The issue presented was whether the matter should be submitted to binding arbitration or adjudicated before one of three tribunals: the Division on Civil Rights, the Superior Court, or the Commissioner of Education. *Id.* at 13, 462 *A.*2d 137. The Court held that the Division on Civil Rights was the most appropriate forum because the sole issue raised was discrimination based on race. *Id.* at 17–18, 462 *A.*2d 137. The Court also noted that if *Teaneck* had involved a

predominance of educational issues, under *City of Hackensack v. Winner*, 82 *N.J.* 1, 410 *A.*2d 1146 (1980), the Commissioner of Education would have been given primary jurisdiction. *Id.* at 18 n. 3, 462 *A.*2d 137; *see also Balsley v. North Hunterdon Reg'l Sch. Dist. Bd. of Educ.*, 117 *N.J.* 434, 568 *A.*2d 895 (1990) (holding that Division of Civil Rights, not the Commissioner of Education, has jurisdiction to award attorneys fees under the Law Against Discrimination); *see also Hinfey, supra*, 77 *N.J.* 514, 391 *A.*2d 899 (directing that agency with the dominant interest and expertise hear a hybrid educational and civil rights issue).

In *State Farm Mutual Automobile Insurance Co. v. Public Advocate*, 118 *N.J.* 336, 571 *A.*2d 957 (1990), plaintiff insurance company and others challenged the Public Advocate's fees and expenses for representing the public interest at insurance rate proceedings. *Id.* at 341–44, 571 *A.*2d 957. The relevant issue raised by that appeal was whether the Public Advocate or the Department of Insurance was in the best position to develop the record. *Id.* at 349, 571 *A.*2d 957. The Court concluded that the Department of Insurance should resolve the case because of its particular expertise on insurance matters and the Public Advocate's financial interest in the outcome of the proceeding. *Id.* at 350, 571 *A.*2d 957; *see also New Jersey Div., Horsemen's Benevolent Protective Ass'n v. New Jersey Racing Commission*, 251 *N.J.Super.* 589, 605–06, 598 *A.*2d 1243 (1991)(holding that while Racing Commission had power to issue consent order against Horsemen's Association for mismanagement of funds, plaintiffs were not bound by Racing Commission's decision because Chancery Division was "in a better position to afford the full range of equitable and legal remedies").

Consistent with our holding that the Division is deemed to have primary jurisdiction to decide compensability issues, the practice has been to wait until after the Division has adjudicated the compensability issues before pursuing a negligence action. *Volb v. G.E. Capital Corp.*, 139 *N.J.* 110, 114, 651 *A.*2d 1002 (1995); *Millison, supra*, 101 *N.J.* at 186, 501 *A.*2d 505; *Imre v. Riegel*

*Paper Corp.*, 24 *N.J.* 438, 449, 132 *A*.2d 505 (1957); *Bustamante v. Tuliano*, 248 *N.J.Super.* 492, 493, 591 *A*.2d 694 (App.Div.1991); *Linden v. Solomacha*, 232 *N.J.Super.* 29, 30, 556 *A*.2d 346 (App. Div.1989). That procedure is consistent with Millison's acknowledgment "that the statutory scheme contemplates that as many work-related disability claims as possible be processed exclusively within the Act." *Millison, supra*, 101 *N.J.* at 177, 501 *A*.2d 505.

■ Notwithstanding that prevailing practice, we do not mean to suggest by our determinations today that the Act precludes or discourages the protective filing of a common-law cause of action. Such a filing is to prevent the running of the statute of limitations in the event certain accidents are found by the Division to be noncompensable. When that occurs, however, the common law cause of action should be held pending disposition of the matter in the Division. *Dudley v. Victor Lynn Lines, Inc.*, 28 *N.J.* 576, 579, 147 *A*.2d 793 (1959); *Dudley, supra*, 32 *N.J.* 479, 496, 161 *A*.2d 479 (1960); *Imre v. Riegel Paper Corp.*, 43 *N.J.Super.* 289, 294, 128 *A*.2d 498 (App.Div.), *rev'd on other grounds*, 24 *N.J.* 438, 132 *A*.2d 505 (1957).

Our analysis, we believe, best preserves the *quid pro quo* of workers' compensation, which is that an employer makes swift and certain payments without regard to the employer's fault in exchange for immunity from common-law tort liability. Despite the fact that the benefits under the Act may seem grossly inadequate when measured against the nearly two million dollar jury award in this case, the Legislature has made the policy determination that in cases such as this one, the Act provides the exclusive remedy.

## III

Next, we review the Appellate Division's determination that the accident is compensable. Plaintiff maintains that the accident did not arise out of and in the course of employment because it did not occur in an employer controlled area. She argues that because decedent had concluded his work day, had left the bridgehouse, and was on his way to his motor vehicle parked in the Hess lot,

the accident was not compensable. NJDOT, on the other hand, argues that the accident occurred on the employer's premises while decedent was on his way to an employer provided parking lot.

The "going and coming rule" that existed in workers' compensation jurisprudence since the inception of the Act was abrogated by the 1979 amendments to the Act. *L.* 1979, *c.* 283, § 12. In its place, the Legislature established the premises rule. That was accomplished by defining for the first time when employment begins and ends. Pertinent to this case, the amendments provide: "Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer." *N.J.S.A.* 34:15–36.

The premises rule is based on the notion that an injury to an employee that happens going to or coming from work arises out of and in the course of employment if the injury takes place on the employer's premises. *Cressey v. Campus Chefs, Div. of CVI Serv., Inc.,* 204 *N.J.Super.* 337, 342–43, 498 *A.*2d 1274 (App.Div. 1985). The premises rule "limits recovery to injuries which occur on the employer's premises ... by confining the term 'course of employment' to the physical limits of the employer's premises." *Id.* at 342, 498 *A.*2d 1274. Thus, unless one of the statutory exceptions not implicated here is triggered, an employee who is not physically on the employer's premises is not technically in the course of the employment. *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 96, 543 *A.*2d 45 (1988).

The Legislature used the phrase "excluding areas not under the control of the employer" in its definition of employment because it intended to include areas controlled by the employer within the definition. That phrase was intended to make clear that the premises rule can entail more than the four walls of an office or plant. The pivotal questions under the premises rule are (1) where was the situs of the accident, and (2) did the employer have

control of the property on which the accident occurred. *Livingstone, supra,* 111 *N.J.* at 96, 543 *A.*2d 45.

Although the Act does not define "control," this Court has stated that control exists when the employer owns, maintains, or has exclusive use of the property. *Livingstone, supra,* 111 *N.J.* at 104, 543 *A.*2d 45. Here, NJDOT owned, maintained, and controlled the bridge where decedent worked and was fatally injured.

■ In the present case, it has been clear from its inception that the accident occurred on the roadway surface of the bridge where decedent worked. Similarly, there has never been a genuine dispute about whether NJDOT controlled the bridge. The question whether NJDOT controlled the Hess lot was simply a red herring. Because the accident did not occur in either of the three parking lots, which lot decedent was going to when he was struck by a car on the bridge was not relevant. Regardless of which lot was used, the employees of NJDOT had to walk north on the bridge, and the accident occurred on the bridge. This case is no different than the case of an employee who punches out on the time clock at the front entrance and is injured while walking through the plant to reach his or her car parked in a rear parking lot. Hence, we affirm the Appellate Division's holding that compensability was established as a matter of law.

We are also persuaded that NJDOT's second motion for summary judgment should have been granted. In *Brill v. Guardian Life Ins. Co., of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), we established a standard to guide trial courts with respect to when to grant summary judgment motions. We explained that a trial court should deny a summary judgment motion when the non-moving party has presented evidential materials that create a genuine issue of material fact. *Id.* at 529, 666 *A.*2d 146. When viewed in a light most favorable to the non-moving party, an issue of fact will not be considered "genuine" "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact." *Id.* at 540, 666 *A.*2d 146. In other words, when the evidence "is so one-sided that one party must prevail as a matter of law," the trial

court should readily grant summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

Under the *Brill* standard there was never a genuine dispute over a fact that was relevant to the issues presented: whether the accident occurred on the bridge, and whether NJDOT controlled the bridge when decedent was killed. Consequently, NJDOT was shielded from a common-law tort action by virtue of *N.J.S.A.* 34:15–8, and the wrongful death action against it should have been dismissed on summary judgment.

We hold that the Division rather than the Superior Court should have decided the compensability issues. Once the Superior Court erroneously decided not to stay the trial in the negligence action until after the Division had rendered its decision, it should have granted NJDOT's motion for summary judgment. We therefore affirm the Appellate Division's determination that the negligence action should have been dismissed as a matter law.

*For modification and affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.