LOUIS PIRACCINI, ADMINISTRATOR OF AMELIA PIRAC-
CINI, APPELLANT, v. DIRECTOR GENERAL OF RAIL-
ROADS ET AL., RESPONDENTS.

Submitted July .5, 1920—Decided November 15, 1920.

A railroad employe kindled a fire in a city near a path long frequented
by the public and by school children, and near a playground, for
the purpose of clearing the land of dry leaves. A child five years
old was soon after discovered on· or near the property not far
from the playground all in flames. She died by reason of the
burns. *Held*, that the defendant was responsible for negligence
regardless of any implied invitation to the child, because of its
responsibility for the use of a dangerous agency. *Van Winkle* v.
*American Steam Boiler Co.*, 52 N. J. L. 240, followed.

On appeal from the Supreme Court.

The defendant railroad company owned land in Dover on
which were erected its signal repair machine shops. The
land was not fenced where it abutted a public street except by
a guard fence. Adults and children without let or hindrance
entered on what is called the playground portion of the prop-
erty, and crossed the property by a pathway which had been
used by the public for over forty years. School children used
it in going to school. On March 25th, 1919, the ground was
covered with dry grass. About eleven A. M. an employe of
the defendant, in obedience to orders, started a fire near and
about the signal repair shop for the purpose of clearing the
land of dry·leaves. Between one and one-fifteen o'clock the
decedent, a child about five years old, was discovered not far
from the playground, on or near the property, "all in flames."
As a result, she died.

For the appellant, *Elmer W. Romine*.

For the respondents, *Frederic B. Scott*.

The opinion of the court was delivered by

SWAYZE, J.   Much of the argument was directed to the question whether the child had been invited to use the pathway and whether she was actually using it in pursuance of the invitation.   In the view we take, these questions are unimportant.   The case is not one where the liability of the defendant depends on invitation.   Their liability grows out of their responsibility for a dangerous agency.   The principle, as stated by Chief Justice Beasley, may well be repeated at length:   In "all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, *ipso facto,* imposes as a public duty the obligation to exercise such care and skill. The law hedges round the lives and persons of men with much more care than it employs while guarding their property, so that, in this particular, it makes, in a way, every one his brother's keeper, and, therefore, it may well be doubted, whether in any supposable case where redress should be withheld from an innocent person who has sustained immediate danger by the neglect of another in doing an act which, if carelessly done, threatens in a high degree one or more persons, with death or great bodily harm.   Such misfeasances, if they result fatally, are indictable crimes; where they inflict particular damage upon individuals they should, it is conceived, be actionable." *Van Winkle* v. *American Steam Boiler Co.,* 52 *N. J. L.* 240.   A recent application of the principle is in *New Jersey Fidelity and Plate Glass Insurance Co.* v. *Lehigh Valley Railroad Co.,* 92 *Id.* 467.

Starting with the legal liability for negligence in the case of highly dangerous acts as defined by Chief Justice Beasley for the major premise, the question is whether setting fire to dry grass in a populous town near a pathway and playground frequented by school children may be such an act.

The answer is not doubtful.   Always and everywhere since the beginning of civilization with man's discovery of the means of producing fire, it has been regarded as a dangerous as well as a beneficent agency, to be handled with care.   Mr.

Beven, in his work on "Negligence," quotes from the Digest on the Aquilian law, a passage from Paulus, part of which may well be translated:

"If a man should set fire to his stubble or his thorns, in order to burn them up, and the flames increase and spread so as to injure the corn or vines of some one else, we have to ask whether it took place through his negligence or his want of skill." D. 9, 2, 30, 3. Monro's translation, Vol. 2, 133. If such was the rule where property was destroyed, much more would it be the rule where life was destroyed. In early English law the rule was much more stringent. He in whose house or chambers a fire originated, whether by negligence or mere accident, was responsible for injuries occasioned by its spread to other premises, and a majority of the King's Bench in 1697 held that the doctrine extended to fires kindled in an owner's close. *Tuberville* v. *Stampe*, 1 *Salk.* 13; 1 *Ld. Raym.* 264, cited in *Dorr* v. *Harkness*, 49 *N. J. L.* 571, 573. This stringent rule proved unsatisfactory and was corrected in England by statutes which were never adopted in full scope in New Jersey, but were made applicable to the case of a tenant only. Hence arose the question suggested in Dorr *v.* Harkness, whether the ancient strict rule making the landowner liable in case of mere accident as well as in case of negligence, was the law in New Jersey. This question was settled in later cases. *Read* v. *Penna. Railroad Co.*, 44 *N. J. L.* 280; *Reilly* v. *Mayor, &c., of City of New Brunswick*, 92 *Id.* 547. The latter was in this court, and it is now settled that the one who sets a fire and is negligent in setting or guarding it, is liable if damage results. No other result is possible. The danger from fire is such that several statutes have been passed to provide against it. They may be found collected in the Compiled Statutes, *p.* 2325, and Supplement, *p.* 613, and the following. One of the provisions expressly requires that all persons who set fire or burn any brush, grass or other material whereby any property may be endangered or destroyed, shall keep and maintain a careful and competent watchman in charge while burning. *Pamph. L.* 1906, *p.* 225, § 10. The statute relates to forest fires;

the legislature probably thought that the ordinary rules as to negligence sufficed for thickly settled communities.

While the law is as we have stated in the case of one who himself negligently starts or guards a fire, the question remains whether the rule *respondeat superior* is applicable. Reilly *v.* New Brunswick does not settle this question, since the exemption from liability in that case was the exemption of a, municipal corporation under our rule that exempts such a corporation from liability for negligence of its servants. The doubt, if there is a doubt, arises out of an ambiguous expression of Blackstone (1 *Bl. Com.* 431). It is, however, settled that a railroad company is liable for negligence of its servants in permitting a fire which spreads by reason of accumulation of combustible matter on the railroad property or on property of a third person. *Delaware, Lackawanna and Western Railroad Co. v. Salmon,* 39 *N. J. L.* 299.

There remains the question whether there was any evidence of negligence to go to the jury. The test is whether injury to the plaintiff or to a class of which the plaintiff was one, ought reasonably to have been anticipated. *Guinn v. Delaware and Atlantic Telephone Co.,* 72 *N. J. L.* 276; *Meyer v. Benton,* 74 *Id.* 533.

To ask the question in this case is to answer it. A fire was intentionally set by a servant of the railroad company acting under orders. It is not denied that his act was the act of the company. It was in the midst of a populous city, near a path frequented by the public for many years, with the acquiescence of the railroad company and frequented by school children; near also to land significantly called "Playground;" there was so much combustible matter that although the fire was set at eleven A. M. a jury might infer that there was still enough fire at one P. M. to kindle the clothing of the decedent. The case is much like *Davenport v. McClellan,* 88 *N. J. L.* 653. The standard of care required is substantially that required in *New Jersey Fidelity and Plate Glass Insurance Co. v. Lehigh Valley Railroad Co.,* 92 *Id.* 467. It was error to direct a verdict for the defendant.

Let the judgment be reversed and the record remitted to the end that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 14.