10 N.J. Super. 486 (1950)
77 A.2d 502
EDWARD STRANG, MINOR, ETC., AND ANOTHER, PLAINTIFFS-RESPONDENTS,
v.
SOUTH JERSEY BROADCASTING COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 15, 1950.
*487 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Gene R. Mariano argued the cause for the respondents.
Mr. S.P. McCord, Jr., argued the cause for the appellant (Messrs. Starr, Summerill & Davis, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
Should the defendant's motion for a directed verdict have been granted? The motion was made and denied when the plaintiff rested. Thereupon the defendant, without presenting any evidence, also rested, and soon the jury returned a verdict for the plaintiff in a very substantial sum.
The defendant owned a tract of 15 acres of land on Mt. Ephraim Avenue, close to the intersection with Olympia Road in Camden. There it had a broadcasting tower and a small administration building, but most of the tract was vacant land. On January 15, 1949, a Saturday, the defendant's janitor took waste paper and trash from the administration building and set it afire on the ground about 30 feet from the building. He then went back into the building to attend to other chores. Fifteen minutes or so later he heard screams and, running out, found the infant plaintiff by the bonfire, with his clothes burning. The question that the court left to the jury was whether the defendant was liable for the injury to the child.
The defendant's land was unfenced and was commonly used by small boys living in the neighborhood as a playground, without objection by defendant. The janitor knew that boys often played on the property not far from where he set the fire, but he saw none around when he started the fire. The fire was a small one  described by one witness as about two *488 feet in diameter. The Strang family, including the infant plaintiff, who was then six years old, lived in their home on Olympia Road, facing the defendant's property and separated from it by only the road and by vacant lots about 100 feet deep. The neighborhood is "thickly populated." Let us now turn to the law.
A landowner who invites another to come upon the premises, must use reasonable care to have his premises in a safe condition; but the landowner's only duty to a licensee or a trespasser is to abstain from acts willfully injurious. Such is the general rule. Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893). The rule was applied in the first of the turntable cases to come before our highest court, D.L. & W.R.R. Co. v. Reich, 61 N.J.L. 635 (E. & A. 1898), where it was held that one who places upon his land something which is of a character attractive to children and at the same time dangerous to them, does not thereby become chargeable with the duty of using care to keep them off the premises, or to protect them if they enter. The repudiation of the dangerous attraction doctrine was reiterated in Friedman v. Snare & Triest Co., 71 N.J.L. 605 (E. & A. 1905).
Fifteen years later came Piraccini v. Director General, 95 N.J.L. 114 (E. & A. 1920). Defendant company had set fire to the grass on its land in order to clear it off, and a five-year-old child was burned to death. In an action under the Death Act, a verdict was directed for the defendant. The Court of Errors and Appeals reversed, holding that it was immaterial whether or not the child was on the company's property by invitation; that liability grew out of defendant's responsibility for a dangerous agency  fire. The test of liability was said to be whether injury to one of the class of which decedent was one, ought reasonably to have been anticipated. Holding that the child was such a one, the court pointed out that the fire was set "in the midst of a populous city, near a path frequented by the public for many years with the acquiescence of the railroad company, and frequented by school children; near also to land significantly called *489 `Playground.'" Most of the cases cited by Justice Swayze, who wrote the opinion for the court, are illustrated by Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890), and follow the rule that one who keeps a dangerous agency on his property must exercise great care to prevent its escape. They do not deal with the duty of a landowner to a licensee or trespasser. Two of the cited cases went further. Guinn v. Del. Atl. Tel. Co., 72 N.J.L. 276 (E. & A. 1905), held the defendant liable for death caused by a broken, highly charged wire, although decedent, at the time of contact, was a licensee or trespasser on land of a third person  but not on land of defendant. "The case differs from one where a trespasser or licensee seeks to recover of the landowner. A landowner may in fact reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with. His right to protect his possession and to use his property is paramount. It is these considerations which led this court to deny the liability of the defendant in the turntable cases. (Citations.) The general rule is that a person is liable for those results of his negligence which are reasonaby to be anticipated; the exemption of the landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land, but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with."
Meyer v. Benton, 74 N.J.L. 533 (E. & A. 1906), was similar to the last case in that the accident occurred on property of a third person. The defendant was exonerated because of lack of proof that the presence of children at play should have been anticipated.
The exemption of the landowner, mentioned in the Guinn case, yields in Piraccini to the duty of care for a child, even though he be a trespasser, whose injury by the dangerous instrumentality, if care be not exercised by the landowner, ought to be foreseen.
Several more recent decisions have noticed Piraccini v. Director General. In France v. L.V.R. Co., 96 N.J.L. *490 25 (Sup. Ct. 1920), Justice Swayze, after observing that injury to a mere trespasser need not be anticipated, said that "a broader rule of liability where the defendant is dealing with a highly dangerous agency," had been approved in the Piraccini case. "But the fundamental question is, Ought injury to the plaintiff to be reasonably anticipated?" Neff v. Daniel, 102 N.J.L. 422 (E. & A. 1925), dealing with a dangerous acid, held that there might be a recovery based on defendant's negligence if "what the child did was what a prudent man, knowing what defendant knew, would reasonably expect it might do as a result of such negligence," and said that Piraccini applied that principle. In Spenzierato v. Our Lady, etc., Society, 112 N.J.L. 93 (E. & A. 1934), the court, affirming a judgment for the plaintiff, said that in the Piraccini "case as here an infant child was playing on property of the defendant commonly used as a playground by children. This fact was known or ought to have been known to the defendant in both cases. In both cases, a highly dangerous instrument was used; in the one case, fire; in the other, explosive bombs." The court added significantly that while the rejection of the attractive nuisance doctrine "has found place in our jurisprudence, the principle is not to be extended beyond its strict limitations." Lastly, in Scamporino v. Chapman Chevrolet Co., 132 N.J.L. 302 (Sup. Ct. 1944), it is said that in the dangerous agency cases, liability is based on a failure to exercise a reasonable foresight that the negligent act may cause injury.
The rule that no duty is owed to a licensee, though he be an infant, except to refrain from willful harm, was reiterated, however, in Faggioni v. Weiss, 99 N.J.L. 157 (E. & A. 1923); Miller v. Schmidt, 100 N.J.L. 324 (E. & A. 1924); and Kaproli v. C.R.R. Co., 105 N.J.L. 225 (E. & A. 1928). In the first of these, a twelve-year-old boy was permitted to ride on defendant's automobile; in the second, a child of eight, chased from defendant's property, ran in front of a street car and was killed; and in the last case a four-year-old infant, attempting to climb upon a moving *491 freight car, fell under the car. The first two cases are readily distinguishable from Piraccini v. Director General of Railroads, since the defendants were not maintaining any dangerous agency. Kaproli is closer, for moving railroad trains are highly dangerous, and the defendant was aware of the children's habit to play about the tracks and to clamber over the cars. The true distinction, perhaps, is found in the impracticability of guarding a railroad system against the small invaders.
Decisions from other jurisdictions on liability for injuries received by children, caused by fire, are collected in 36 A.L.R. 297.
We consider that New Jersey still adheres to the view that although the dangerous agency, the turntable, is attractive to children, yet it does not constitute notice to the landowner that they will come on his land and are apt to be hurt. But if habitually they do come to play upon his land and the landowner has notice of the fact, then he owes to them a duty which, perhaps, may be regarded as an extension of the old obligation to refrain from intentional injury. Compare the "playground doctrine," 65 C.J.S., Negl., § 40, p. 505; Altenbach v. L.V.R. Co., 37 A.2d 429 (Pa. 1944). The New Jersey rule seems to be in substantial accord with the Restatement, Torts, § 339.
"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."
*492 It may be questioned whether a small bonfire is highly dangerous to children  or involves "an unreasonable risk of death or serious bodily harm to them." While that seems to us a question for the jury, we may observe that in most cases growing out of fires, the victim's clothing has caught fire. The temptation to play with a fire and hence the danger may be greater if the fire is small than if it is great and terrifying. Whether a prudent man would have set the fire and left it unattended, as was done in this case, was also for the jury. "The likelihood that the act will cause injury to another; * * * the utility of the act itself; the feasibility of a substitution whereby the same benefits may be obtained at less hazard,  all these considerations enter into the question of what is reasonable care." Smith v. Okerson, 8 N.J. Super. 560 (Ch. Div. 1950).
We find no error in the denial of defendant's motion for a directed verdict. Scarano v. Lindale, 121 N.J.L. 549 (E. & A. 1939). The judgment is therefore affirmed with costs.