**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3533-23

BRICKS FLOWER MARKET,
LLC, PRASAD KURUGANTI,
and VENIESA KEMPADOO,

     Plaintiffs-Appellants,

v.

BRICK FLOWER MARKET,
LLC, RALPH PETRELLESE,
and NANCY PETRELLESE,[1]

     Defendants-Respondents.

_____

Argued March 17, 2026 – Decided April 29, 2026

Before Judges Gilson, Firko, and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0614-19.

Susheela Verma argued the cause for appellants.

John J. Mensching argued the cause for respondents (Mensching & Lucarini PC, attorneys; John J. Mensching, on the brief).

---

[1] Incorrectly pled as Nancy Peterellese.

PER CURIAM

This appeal involves disputes that arose after plaintiffs purchased the business assets of a flower shop defendants had owned and operated before the sale. Plaintiffs sued defendants, alleging breach of contract, fraud, and related claims. Defendants asserted counterclaims, including breach of a promissory note, under which defendants had leant $110,000 to plaintiffs to help finance the purchase of the assets.

Following a bench trial, the court found plaintiffs failed to prove any of its claims, including damages. The court also found that plaintiffs had breached the promissory note and a related security agreement and, therefore, defendants were entitled to attorneys' fees. Based on those findings, the court entered a final judgment dismissing plaintiffs' claims with prejudice, awarding defendants $114,512.14 for breach of the promissory note, and $65,617.12 in attorneys' fees and costs.

Plaintiffs appeal from the final judgment, arguing that the trial court made incorrect findings of fact and erred in applying the law. Plaintiffs, therefore, request that the final judgment be vacated and the matter be remanded for a new trial. Having reviewed the record, including the evidence presented at trial, we reject all of plaintiffs' arguments and affirm the final judgment.

A-3533-23

I.

We summarize the facts from the record, primarily relying on the evidence presented at trial. Plaintiffs are Prasad Kuruganti (Prasad), Veniesa Kempadoo (Donna), and Bricks Flower Market, LLC (Bricks).[2] Defendants are Nancy Petrellese (Nancy), Ralph Petrellese (Ralph), and Brick Flower Market, LLC (the Market).

Nancy and Ralph are experienced florists, and both worked in the florist business for over thirty years before the sale. Nancy gained experience by working in her family's floral business starting at age sixteen. Ralph began working in the floral industry when he was twenty-one years old.

In December 2005, Nancy and Ralph opened the Market as a flower shop in Brick. They also purchased the property on which the Market is located. Nancy's primary role was as a floral designer. Ralph oversaw payroll, marketing, and was responsible for purchasing flowers for the Market.

The Market had three primary avenues of generating sales: (1) online sales through 1-800-Flowers; (2) direct sales through phone and direct website orders; and (3) in-person sales in the shop. Sales generated through 1-800-

---

[2] We use first names consistent with the practice of the parties and for ease of reference. In doing so, we mean no disrespect. Veniesa Kempadoo uses the name Donna.

A-3533-23

Flowers were made through the 1-800-Flowers website and routed to the Market as a participating florist for fulfillment. The Market eventually obtained "premiere status" with 1-800-Flowers, resulting in the Market receiving "a certain amount of volume for the year" with the understanding that the Market would ensure quality and deliveries in accordance with set standards.

The Market also generated business by supplying flowers for weddings. In connection with those sales, customers often asked for referrals for photographers and DJs. Consequently, Nancy and Ralph started a wedding planning business. In 2015, Nancy and Ralph separated the wedding planning business from the flower business, and formed NJ Wedding Pros, LLC (Wedding Pros). Wedding Pros is owned by Nancy, Ralph, and their daughter, and their daughter manages most of its day-to-day operations.

Ralph and Nancy also formed a non-profit charity known as Butterfly Charities. Butterfly Charities operated a seasonal greenhouse next to the Market, consisting of hundreds of live butterflies with flowering plants. Visitors would pay an admission fee, and the proceeds were donated to local charities.

In 2017, Nancy and Ralph began planning to sell the Market in connection with their anticipated retirements. Accordingly, they hired Cody Weaver, a broker, to help them sell the Market's business assets. Around the same time,

4

Prasad and Donna were looking to purchase a business. Prasad and Donna both had backgrounds in information technology but also had experience running and operating an automobile shop they had purchased. In 2017, they were looking to purchase a business that Donna could operate.

The parties initially made contact through Weaver as the broker. In and around October 2017, Prasad and Donna had an initial in-person meeting with Ralph at the Market. Before that meeting, through Weaver, Prasad received several documents, including statements from the Market's point-of-sale system and a profit and loss statement for the period from January 2017 through September 2017 (the 2017 profit and loss statement). The 2017 profit and loss statement, which had been prepared by Ralph, showed the Market had a net income for that period of $223,613.

The parties also had a second in-person meeting. During that meeting, Nancy recalled the parties discussed the Market's overall "day-to-day" operations," including the use of delivery drivers and how those drivers got paid.

On December 8, 2017, the parties signed an Asset Purchase Agreement (AP Agreement). Under the AP Agreement, the Market, as "Seller," agreed to sell substantially all its business assets, including goodwill, to Bricks, as the

5

"Buyer," for $230,000.  The sale did not include any assets from Wedding Pros or Butterfly Charities.

The purchase price was to be paid by (a) a $10,000 initial deposit, (b) a $110,000 loan; and (c) a $110,000 payment at closing.  The initial deposit was to be held in an escrow by Buyer's attorney.  The loan was to be memorialized by a promissory note.  The loan accrued interest at the rate of 6.5 percent "per annum," was to be paid back with monthly installments of $3,371.39 over thirty-six months, and was to be secured.

Bricks also agreed to rent the property on which the shop was located from Ralph and Nancy.  The lease was to be for ten years with a $4,500 monthly rental payment, which would increase every two years by three percent.

The AP Agreement stated that the assets were being sold "as is" and the Market was not making any "promises about the condition or value of any of the business assets included in this sale."  In that regard, the AP Agreement stated:

> Seller has not made any representations regarding the value or condition of the Assets.  All Assets are being purchased by Buyer in "as[-]is" condition.
>
> . . . .
>
> Buyer acknowledges that Seller has not made any representations regarding the business viability, value of the assets, or value or condition of the Assets.  All

A-3533-23

Assets are being purchased by Buyer in "as[-]is" condition, unless otherwise set forth.

Plaintiffs were given the right to inspect the assets, receive certain information about the Market, and conduct due diligence. In that regard, the AP Agreement provided:

[1.] The Seller agrees to permit the Buyer to inspect the property at a reasonable time before the closing. The Seller will permit access for all inspections provided for in this contract as follows: The Buyer shall have fifteen (15) days from the date of execution of the within Agreement to conduct these inspections. In the event these inspections are unsatisfactory to the Buyer, then the Buyer reserves the right to terminate the within Agreement.

. . . .

[2.] Seller has disclosed to Buyer all material information to which Seller has notice or knowledge relating to Seller and the Assets which could reasonably be expected to have a material adverse effect on Buyer's operation of the Assets.

. . . .

[3.] Seller shall, within three (3) days of the execution of this Agreement, deliver or otherwise make available to Buyer, the following documents which pertain to the Florist if not already provided, leases for any equipment, service contracts, insurance policies, certificate of occupancy, management agreements, Seller's financial information including accounting, business records, ledgers and tax business tax returns,

7

notices of violations or infractions, business licenses, etc. ("Due Diligence Items").

. . . .

[4.] Buyer shall have a period of thirty (30) days from the execution of this Agreement to satisfy all of Buyer's requirements as to the intended commercial use of the Real Property ("Due Diligence Period").

Additionally, Nancy and Ralph agreed to provide consulting services to Bricks "up to twenty hours per week for the first four (4) weeks after closing." In connection with that agreement, the AP Agreement contained a restrictive covenant, under which Ralph and Nancy represented they would not compete with Bricks in the floral business within a fifty-mile radius for ten years.

The restrictive covenant had an exception for the operation of Wedding Pros. That exception stated:

> With regard to the Seller's business, NJ Wedding Pro[s], Seller shall be entitled to sell and profit from "floral packages" to clients. . . . NJ Wedding Pro[s] shall provide [Bricks] with all referrals or sales to fulfill the floral arrangements sold to clients for wedding events. In return, Buyer shall offer discounted prices and/or commissions based on wedding referral sales provided to it by NJ Wedding Pro[s]. Buyer shall represent that it shall provide the same quality and meet those standards imposed by the Seller in the assemblance and design of the floral arrangements requested by NJ Wedding Pros.

The closing on the sale of the assets took place on January 12, 2018. At the closing, the parties executed several agreements, including a Bill of Sale, the Promissory Note, the Security Agreement, a Lease, and a guarantee of the lease.

The Bill of Sale memorialized the business assets being sold by the Market to Bricks. It contained indemnification provisions. Under the Seller's indemnification, the Market agreed to indemnify Bricks from, among other things, "any damage, loss, or deficiency due to any breach of warranty, misrepresentation, or non[-]fulfillment of any agreement on the part of the [Market] contained in the Contract of Sale or in any document or list delivered or to be delivered to [Bricks] in connection with the Contract of Sale." In Bricks' indemnification, it agreed to indemnify the Market against, among other things, "all actions, suits, proceedings, judgments, costs and expenses (including reasonable attorney[s'] fees) connected with the matters described in (1) above, including any actions, suits or proceedings between Buyer and Seller, and including actions, suits or proceedings to enforce Buyer's obligations under this Paragraph 8."

The Promissory Note memorialized the loan of $110,000 from the Market to Bricks. It provided that if there was a default, which included the non-payment of any monthly payment when due, the Market would be entitled to

9

declare the entire unpaid balance of principal, together with interest, to be immediately due and payable.

In connection with the loan and Promissory Note, Bricks also signed a Security Agreement (the Security Agreement). The Security Agreement pledged Bricks' assets as security for the loan. The Security Agreement also provided that if there was a default on the loan, Bricks would pay all expenses related to the default, "including reasonable attorney[s'] fees."

Following the closing, the relationships among the parties deteriorated. Initially, Nancy and Ralph assisted Donna in the operations of Bricks. Nancy testified, however, that around Mother's Day of 2018, various problems arose. She explained that during the first weekend of May, she was at Bricks and learned there was a bride "hysterically crying" on the phone "because her wedding flowers [were] all wrong." Nancy also testified Donna stayed in the office during this call, in what she perceived was an effort to avoid interacting with the bride.

Ralph testified that he also witnessed that situation. He explained that at that point in time, he and Nancy decided they could not refer wedding business to Bricks because it would adversely affect Wedding Pros.

A-3533-23

Prasad testified that in and around October 2018, he began to identify "discrepancies" in the payroll expenses and profits. Prasad analyzed certain documents and came to believe that there were many more employee hours incurred in 2017 than were disclosed in the records provided by Ralph. Prasad also believed that Ralph and Nancy had failed to disclose all delivery charges associated with operating the flower business.

In December 2018, Prasad sent Ralph an email identifying the alleged discrepancies and stating that the failure to report those business expenses meant that Ralph and Nancy had "inflated profits" for the years 2016 and 2017. Prasad requested that Ralph immediately "show proof of accounting for these" discrepancies. He also informed Ralph that until these issues were resolved, Bricks would stop paying the monthly installments under the Promissory Note. Consistent with the statement in that email, in December 2018 and thereafter, Bricks did not make the monthly installment payments due under the Promissory Note.

Less than two months later, on February 14, 2019, plaintiffs sued defendants, alleging five causes of action: (1) breach of contract; (2) fraud; (3) breach of the duty of good faith and fair dealing; (4) unjust enrichment; and (5)

11

piercing the corporate veil. As relief, plaintiffs sought "rescission of the contract," compensatory damages, and punitive damages.

A week after the complaint was filed, defendants, through their counsel, sent a letter informing plaintiffs that they were in default under the Promissory Note and Security Agreement, and declared the entire unpaid balance of the loan, together with interest and attorneys' fees, to be due and payable. The following month, defendants filed an answer and counterclaims. In their counterclaims, defendants asserted claims for (1) breach of the Promissory Note and Security Agreement; (2) default under the Promissory Note and Security Agreement; (3) unlawful possession of certain assets; (4) unlawful conversion of assets; and (5) and a demand for the release of the funds held in escrow.

The parties thereafter conducted and completed discovery. Before trial, plaintiffs' claim for unjust enrichment was dismissed on summary judgment and plaintiffs do not appeal from that order.

In March 2023, a four-day bench trial was conducted. During trial, the court heard testimony from Prasad, Ralph, and Nancy. No experts were called. The court also considered numerous documents that were entered into evidence, including the AP Agreement, the Bill of Sale, the Promissory Note, and the Security Agreement.

On December 22, 2023, after receiving the parties' post-trial briefs, the trial court rendered an oral decision and entered an order of judgment. The trial court found plaintiffs had failed to prove any of their causes of action and, therefore, dismissed those claims with prejudice. The court also found that plaintiffs had defaulted under the Promissory Note and found defendants were entitled to a monetary judgment for the default. Finally, the court found that defendants were entitled to attorneys' fees and costs and directed them to submit certifications detailing the fees and costs incurred.

In its oral decision, the trial court made detailed findings of facts and conclusions of law. The court reviewed the documents related to the sale of assets, including the AP Agreement, the Promissory Note, the Bill of Sale, and the Security Agreement. The court also made credibility findings, determining that Nancy's and Ralph's testimony was credible, but Prasad's testimony was not credible and was often unsupported by any documentation.

The court addressed each of plaintiffs' causes of action. On plaintiffs' breach of contract claim, the court initially noted that plaintiffs contended defendants breached because Wedding Pros had not made referrals to Bricks. The court rejected that contention, finding the AP Agreement provided referrals were to be made if Bricks ensured the quality of the flowers and service it

A-3533-23

provided. The court then found that Nancy and Ralph had testified credibly that Donna was not able to provide the quality service they needed to support Wedding Pros.

The court also found that defendants had not breached any of the provisions of the AP Agreement or Bill of Sale. In that regard, the court determined that defendants had provided all the documents required under the AP Agreement and those documents did not contain misrepresentations. In making those findings, the court also noted that the AP Agreement and Bill of Sale did not guarantee what, if any, profit Bricks would make. Finally, the court also found that plaintiffs had failed to prove any damages related to their alleged breaches of contracts.

Addressing plaintiffs' fraud claim, the court found that plaintiffs had failed to establish the elements of fraud. The court rejected plaintiffs' argument that the 2017 profit and loss statement was inaccurate and the claims defendants had underreported payroll and delivery expenses. Consequently, the court determined that defendants had not made any material misrepresentations. In doing so, the court noted plaintiffs' real complaint was that they did not make the profit that they had hoped to make. In rejecting that argument, the court

14

emphasized no document signed in connection with the asset sale guaranteed plaintiffs a profit or a specific amount of profit.

Having found neither a breach of contract nor fraud, the court rejected plaintiffs' claim for rescission. The court also noted that rescission was a "discretionary" remedy and the facts in this case did not support rescission, particularly because defendants had performed as required by the contract.

Next, the court rejected plaintiffs' claims that defendant violated the implied covenant of good faith and fair dealing. In that regard, the court found Ralph and Nancy had credibly testified they acted in good faith and tried to assist Donna in the operation of Bricks after the sale. Thus, the court expressly found that defendants had not acted in bad faith.

Finally, the court noted that the piercing of the corporate veil claim was not really a cause of action; rather was a method of seeking relief. Nevertheless, the court analyzed the claim and found that plaintiffs had not proven any of the elements needed to pierce a corporate veil.

Turning to defendants' counterclaims, the court determined plaintiffs had breached the Promissory Note. The court found that, as of May 2023, the unpaid principal due under the note was approximately $78,000, and with interest plaintiffs owed just over $109,000.

15

Relying on the attorneys' fee shifting provisions in the Bill of Sale and the Security Agreement, the court ruled that defendants were entitled to attorneys' fees and costs. Accordingly, the court directed defendants to submit affidavits detailing the fees and costs sought.

Thereafter, defendants filed their application for fees and costs, and plaintiffs submitted opposition. On May 24, 2024, the trial court heard argument on the fees and costs application. Four days later, on May 28, 2024, the trial court rendered an oral decision granting defendants' application for attorneys' fees and costs. On May 31, 2024, the court entered an amended final judgment. In the final judgment, the court (1) dismissed plaintiffs' claims with prejudice; (2) awarded defendants $114,512.14 "representing the amount due under the loan documents as of May 28, 2024;" and (3) awarded defendants $65,617.12 in attorneys' fees and costs. The court also directed plaintiffs' counsel to distribute to defendants the $10,000 deposit still held in escrow.

Plaintiffs now appeal from the final judgment.

II.

On appeal, plaintiffs make a series of arguments challenging the trial court's factual findings and legal conclusions. They contend the trial court erred in (1) dismissing their claims of fraud; (2) dismissing their breach of contract

16

claims; (3) dismissing their claim of breach of the duty of good faith and fair dealing; (4) not piercing the corporate veil; and (5) awarding defendants attorneys' fees and costs. Plaintiffs also challenge the trial court's credibility findings and the court's findings that defendants acted in good faith.

Appellate courts apply a deferential standard in reviewing factual findings by a trial court. Balducci v. Cige, 240 N.J. 574, 594-95 (2020). "A reviewing court must accept the factual findings of a trial court that are 'supported by sufficient credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). In an appeal from a bench trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

In contrast, an appellate court reviews de novo the trial court's interpretations of law, including the interpretation of contracts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also

Serico v. Rothberg, 234 N.J. 168, 178 (2018). Nevertheless, "appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg, 220 N.J. at 254 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

III.

We begin by analyzing the findings and rulings on plaintiffs' claims. As already noted, at trial plaintiffs pursued three causes of action: (1) fraud; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. They also made a claim seeking to pierce the Market's corporate veil.

A. Plaintiffs' Fraud Claims.

There are two types of frauds: legal fraud and equitable fraud. See Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (1981). Legal fraud consists of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 28 (App.

Div. 2012) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). Equitable fraud is similar but does not require knowledge of falsity or an intent to obtain an undue advantage. Liebling v. Garden State Indem., 337 N.J. Super. 447, 453 (App. Div. 2001). Under either theory, "fraud is never presumed, but must be established by clear and convincing evidence." Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003).

When there is no affirmative misrepresentation, silence or an omission may constitute fraud when there is a duty to disclose a material fact. N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc., 319 N.J. Super. 435, 446 (App. Div. 1998). Whether a duty exists is a question of law. United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (App. Div. 1997). Generally, "a party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them . . . or unless one party 'expressly reposes a trust and confidence in the other.'" N.J. Econ. Dev. Auth., 319 N.J. Super. at 446 (quoting Berman v. Gurwicz, 189 N.J. Super. 89, 93-94 (Ch. Div. 1981)). "[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002).

Plaintiffs argue that defendants committed both legal and equitable fraud by misrepresenting and not fully disclosing the Market's true payroll expenses and delivery expenses. They point to the 2017 profit and loss statement and argue that the full payroll and delivery expenses were not disclosed. They also contend defendants had an obligation to provide a full explanation of the Market's true expenses.

Plaintiffs' arguments are rebutted by the factual findings made by the trial court. The trial court found that Ralph's explanation of the different employee categories identified on the 2017 profit and loss statement "was credible" and did not constitute fraud or misrepresentations.

In contrast, the court found Prasad's testimony concerning his lack of knowledge of the full delivery cost was "not credible." In making that finding, the trial court rejected Prasad's testimony that he was not aware of the full payroll and delivery expenses because his testimony was contradicted by Nancy and Ralph, who credibly testified that they explained to Prasad that employees and drivers were compensated through various methods, and the 2017 profit and loss statement differentiated between on the book and off the book payrolls.

The trial court also found that plaintiffs had failed to establish damages related to their fraud claims. The court determined Prasad "provided what he

believed to be damages, but provided absolutely no documentary support of those perceptions." In that regard, the trial court noted plaintiffs presented no evidence establishing payroll or delivery expenses were higher than represented and provided no documentation supporting their claim that after the sale they incurred higher payroll and delivery expenses.

Having reviewed the testimony and evidence presented at trial, the record establishes that all of the trial court's factual findings are supported by substantial credible evidence. The trial court's legal conclusions are also consistent with well-established law.

We also reject plaintiffs' contention that they were entitled to a rescission of the sale. Because plaintiffs failed to prove fraud or an alternative basis for rescission, they were not entitled to a rescission. See Ocwen Loan Servs., LLC v. Quinn, 450 N.J. Super. 393, 397 (App. Div. 2016) (explaining that equitable relief is left to the sound discretion of trial courts); see also First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 140 (2003) (quoting First Am. Title Ins. Co. v. Lawson, 351 N.J. Super. 407, 423 (App. Div. 2002)) (opining that rescission "is an equitable remedy" which "lies within the inherent discretion of the court"). For similar reasons, plaintiffs were also not entitled to punitive damages. See Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003) (explaining that

a trial court's "decision to award or deny punitive damages" is reviewed for an abuse of discretion); see also Saffos v. Avaya Inc., 419 N.J. Super. 244, 264 (App. Div. 2011) (stating that the trial court's decision to reduce a punitive damages award is reviewed for an abuse of discretion). In short, plaintiffs simply did not prove facts to support either the remedy of rescission or punitive damages.

B. Plaintiffs' Breach of Contract Claims.

To establish a claim for breach of contract, a plaintiff must prove that (1) "the parties entered into a contract containing certain terms;" (2) "plaintiffs did what the contract required them to do;" (3) "defendants did not do what the contract required them to do;" and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." Goldfarb v. Solimine, 245 N.J. 326, 338 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

Plaintiffs argue that the trial court erred in dismissing their breach of contract claims because the court's factual findings were not supported by the record. Plaintiffs also assert that the trial court improperly construed the contracts against them because it found plaintiffs' attorney had drafted the AP Agreement. Neither of those arguments is supported by the record or law.

Relying on the testimony of Nancy and Ralph, the trial court found that defendants had not breached any material provisions of the AP Agreement or the documents signed at the closing. The court specifically rejected plaintiffs' claims that defendants had breached the restrictive covenant. The court found that defendants had the right to continue to operate Wedding Pros under the express terms of the restrictive covenant in the AP Agreement. The court also found Nancy's and Ralph's testimony credible when it determined that Wedding Pros decided not to use Bricks because it could not provide the quality of flowers and service Wedding Pros needed to maintain its customer relations.

The court also found defendants had not withheld anything of a material nature and, therefore, did not breach any of the closing agreements. Those factual findings are all supported by substantial credible evidence. Those factual findings also support the court's legal conclusion that plaintiffs failed to establish a breach of any contract because defendants did what the contracts required them to do and plaintiffs did not show any resulting damages.

We are also not persuaded by plaintiffs' arguments concerning the trial court's interpretation of the various agreements. Plaintiffs argue that the trial court erred in construing the AP Agreement against them because their attorney prepared that agreement. The flaw with that argument is that plaintiffs do not

23

point to any error the trial court made in construing the AP Agreement. In other words, the trial court applied the plain language of the various agreements and enforced them in accordance with the plain language.

In that regard, we note that a fundamental contention made by plaintiffs is that there was some guarantee as to the profitability of the floral business they were buying. The documents directly refute that argument. The parties entered into an asset purchase agreement and, therefore, plaintiffs were not buying the Market; rather, they were buying substantially all the assets the Market used in its business. More fundamentally, none of the agreements guaranteed plaintiffs a particular gross revenue or net profit. The trial court found that there were no material misrepresentations or material omissions. Indeed, the trial court pointed out plaintiffs had the right to conduct due diligence, and they failed to show their due diligence rights were improperly limited or infringed.

C. Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.

An implied covenant of good faith and fair dealing exists in every contract in New Jersey. Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). "[A] party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith

24

[had] engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed., 4th ed. 2002)).

The implied covenant of good faith and fair dealing, however, "cannot override an express term in a contract." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); see also Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (holding that courts must enforce a contract as written, when the language is clear and unambiguous). In that regard, "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Barila, 241 N.J. at 616 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). So, when a contract contains a clear and unambiguous integration clause, the parol evidence rule "prohibits the introduction of [oral and documentary] evidence that tends to alter [the] integrated written document." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268 (2006) (citing Restatement (Second) of Conts. § 213 (A.L.I. 1981)).

The trial court found that Nancy and Ralph had acted in good faith in accordance with the asset sale documents. Indeed, the trial court expressly

rejected plaintiffs' arguments that Nancy and Ralph had acted in bad faith. Consequently, we discern no error in the trial court's determination that plaintiffs failed to establish a breach of the implied covenant of good faith and fair dealing.

D. Plaintiff's Piercing the Corporate Veil Claim.

Corporations are generally treated as separate entities from their owners. Lyon v. Barrett, 89 N.J. 294, 300 (1982). "In the absence of fraud or injustice, courts generally will not pierce the corporate veil to impose liability on the corporate principals." Ibid. Generally, veil-piercing is appropriate only where the corporation's owners misused the corporate entity "to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983).

As the trial court correctly recognized, piercing the corporate veil is not a cause of action; rather, it is a means of obtaining relief when the corporation itself cannot provide that relief. Because plaintiffs had not established any claim against the Market, there was no reason to pierce the Market's corporate veil to hold Nancy or Ralph liable. Indeed, the trial court found plaintiffs had failed to establish any defendant had caused them damages.

IV.

Finally, we analyze the trial court's award of attorneys' fees and costs to defendants. Plaintiffs do not directly challenge the trial court's finding that they breached the Promissory Note and Security Agreement. Instead, plaintiffs rely on their arguments that defendants engaged in fraud, breached contracts, and breached the implied covenant of good faith and fair dealing. As we have rejected those arguments, plaintiffs have no defense to their undisputed failure to pay what was due under the Promissory Note.

Plaintiffs argue that some of the agreements the parties signed did not contain an attorneys' fee shifting provision and, therefore, defendants were not entitled to fees. Further, plaintiffs contend that while some of the agreements did contain a fee shifting provision, there was no clear showing of a breach of those provisions. Finally, plaintiffs assert that the fees award was improper because defendants did not differentiate between fees incurred in defending the complaint and fees incurred in pursuing their counterclaims. We are not persuaded by these arguments because they are not supported by the record or law.

"A prevailing party can recover counsel fees if expressly allowed by statute, court rule, or contract." Empower Our Neighborhoods v. Guadagno, 453

27

N.J. Super. 565, 579 (App. Div. 2018). Generally, when a contract provides for attorneys' fees, the party prevailing on a breach of contract claim is entitled to recover them. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385-86 (2009).

We review an award of attorneys' fees for abuse of discretion. Empower Our Neighborhoods, 453 N.J. Super. at 579; Shore Orthopaedic Grp., LLC v. Equitable Life Assurance Soc'y of the U.S., 397 N.J. Super. 614, 623 (App. Div. 2008). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Empower Our Neighborhoods, 453 N.J. Super. at 579 (alteration in original) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

After making detailed findings of facts and conclusions of law, the trial court dismissed all claims asserted in plaintiffs' complaint. The trial court then found defendants prevailed on their claims, including that plaintiffs had defaulted under the Promissory Note. The Security Agreement, which was signed in connection with the Promissory Note, expressly provided for the recovery of reasonable attorneys' fees. In that regard, the Security Agreement stated that if there was a default under the Promissory Note, the lender would be entitled to receive "all expenses [] incur[red] in enforcing this Agreement,

including reasonable attorney[s'] fees." Additionally, the indemnification provision in the Bill of Sale allowed for an award of fees.

The trial court expressly rejected plaintiffs' arguments regarding differentiating the fees. Moreover, the court reviewed each factor set forth in RPC 1.5(a) and made specific findings in determining the reasonable hourly rate and amount of fees. The court found the time expended, and fees incurred to be reasonable. In that regard, we note that plaintiffs' claims and defendants' counterclaims stem from a common core of facts and were based on related legal theories. Indeed, one of plaintiffs' main arguments was that no monies were owed under the Promissory Note because defendants had committed fraud and breached other agreements. Accordingly, we discern no abuse of discretion and no grounds to reverse the trial court's award of fees and costs.

V.

In essence, plaintiffs' challenges to the trial court's dismissal of their claims and the award of attorneys' fees rely on disputing the trial court's factual findings and mischaracterizing the court's legal conclusions. A review of the record confirms that all the factual findings made by the trial court were amply supported. Moreover, the court correctly applied the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

29

A-3533-23